Honorable Mark W. WHITE, Jr., Governor of the State of Texas, et al., Appellants,

v.

Honorable Louis E. STURNS, Appellee.

No. 13954.

Court of Appeals of Texas, Austin.

May 2, 1983.

Rehearing Denied May 4, 1983.

Jim Mattox, Atty. Gen., David R. Richards, Executive Asst. Atty. Gen., Austin, for appellants.

Waggoner Carr, Austin, for appellee.

PER CURIAM.

The Honorable Mark White, Governor of the State of Texas, and the Senate of the State of Texas, appeal from a declaratory judgment of the trial court, to the effect that appellee, Louis E. Sturns, "by virtue of his appointment" by Governor White's predecessor in office, "is the duly qualified judge of the Criminal District Court No. 2 of Tarrant County, Texas, until the next General Election"; and that under Tex. Const.Ann. art. V, § 28 (Supp.1982), vacancies in the office of district judge may be filled by the Governor without "confirmation" by the Senate of the State of Texas. The judgment results from a suit brought

by Sturns for declaratory and injunctive relief.

The Honorable William P. Clements, Governor White's predecessor in office, on the opening day of the 68th Legislature communicated to the Senate a message wherein he requested the advice, consent, and confirmation of that body with respect to the appointment of Sturns to the court, a vacancy having occurred in the office of judge of the court. The Senate had not acted upon the nomination before Governor White, having become Governor of the State, requested the return of Sturns' nomination, a request to which the Senate agreed. Sturns' nomination having been returned, Governor White nominated L. Clifford Davis to fill the same vacancy. Sturns then filed the present suit, seeking to have himself declared judge of the court and to have the Senate enjoined from purporting to act on the nomination of Davis. The parties stipulated in the court below that Sturns had been nominated by Governor Clements to fill the vacancy, that he has taken the official oath, and that he has commenced to perform judicial duties on the court although a commission has not been issued to him by the Secretary of State.

The correctness of the trial court judgment depends upon its conclusion of law that the vacancy on the court in question could be filled by the unilateral act of appointment by the Governor, that is, his appointment of Sturns without the advice, consent, and confirmation of the Senate. The judgment of the trial court adopts Sturns' position that his appointment was legally effective without Senate action because Tex. Const.Ann. art. V, § 28 does not expressly require such action, thereby implying that it is not required at all with respect to the Governor's filling of vacancies in the district courts. The article provides in part as follows:

> Vacancies in the office of judges of the Supreme Court, the Court of Criminal Appeals, the Court of Civil Appeals and the District Courts shall be filled by the Governor until the next succeeding General Election; . . .

Article V is, of course, the judicial article. Appellants contend that Senate advice, consent, and confirmation were required to effectuate an appointment of Sturns because of the all-inclusive provisions of Tex. Const. Ann. art. IV, § 12 (1955), which reads in part as follows:

> All vacancies in State or district offices, except members of the Legislature, shall be filled unless otherwise provided by law, by appointment of the Governor, which appointment, if made during its session, shall be with the advice and consent of two-thirds of the Senate present. If made during the recess of the Senate, the said appointee, or some other person to fill such vacancy, shall be nominated to the Senate during the first ten days of its session. If rejected, said office shall immediately become vacant, and the Governor shall, without delay, make further nominations, until a confirmation takes place. . . . Appointments to vacancies in offices elective by the people shall only continue until the first general election thereafter.

Article IV is the executive article of the Constitution.

 Sturns insists that the more particular or specific provision in art. V, § 28 should control over the more general provision in art. IV, § 12, an established corollary of the rule of statutory construction that all statutes and parts thereof must stand, if possible, each occupying its proper place, consonant with the principle that legislative intent is more clearly reflected by a particular than by a general statute. The specific statute is thus regarded as an exception to, or a qualification of, any previously enacted general statute on the same subject, which must yield in its scope and effect to the specific provisions of a later statute. *Sam Bassett Lumber Co. v. City of Houston,* 145 Tex. 492, 198 S.W.2d 879, 881 (Tex.1947). The principle applies to the construction of constitutional provisions. *County of Harris v. Shepperd,* 156 Tex. 18, 291 S.W.2d 721, 726 (Tex.1956); *Lufkin v. City of Galveston,* 63 Tex. 437, 439 (1885).

The principle and the corollary depend for their application upon a conflict in the two provisions requiring adjustment or coordination by the court called upon to construe them. We find no such conflict in the present case.

■■■ The power to appoint public officers is an exercise of the executive power of government, divided, qualified, and balanced by the requirement of Senate participation in an exercise of the power, a provision designed to prevent excesses. *Cf. Coates v. Windham,* 613 S.W.2d 572, 576 (Tex.Civ.App.1981, no writ) (construing constitutional separation of powers provision). The Governor's power of appointment derives solely from the Constitution or statute, the latter source of power being inapplicable here. Article IV, § 12 prescribes that all vacancies in State or district offices shall, unless otherwise provided by law, be filled by appointment of the Governor, which appointment shall be with the advice and consent of the requisite number of Senators. The phrase, "unless otherwise provided by law," refers to the power of the Legislature to provide by statute for public offices other than those specified in the Constitution, and allows the Legislature to prescribe the manner for filling vacancies in those statutorily created public offices; provided, however, if the pertinent statute does not prescribe the manner for filling vacancies in those offices, then they shall be filled in the manner required by art. IV, § 12. *Denison v. State,* 61 S.W.2d 1017, 1020–21 (Tex.Civ.App.1933), *writ ref'd,* 122 Tex. 459, 61 S.W.2d 1022 (Tex.1933). Article IV, § 12 contemplates that the appointment of a public officer thereunder results from his nomination by the Governor, submitted to the Senate for its advice, consent, and confirmation. This extends to *every exercise* by the Governor of his appointing power, for

> the clear import, language, and requirement of the Constitution is that any and every appointment by the Governor to fill a vacancy in a state or district office must be with the advice and consent of two-thirds of the Senate as in said section 12 provided.

*Denison v. State, supra,* at 1021.

■■■ We need not go behind the plain words of art. IV, § 12 and art. V, § 28, for Sturns concedes that both are unambiguous. He argues, however, that the former article applies only to *executive* offices includable in the phrase "State or district offices," while art. V, § 28 provides for the filling of vacancies in the *judicial* offices created and authorized by art. V. We observe, however, that *Denison v. State, supra,* involved the filling of a vacancy on the Texas Highway Commission, an agency not mentioned in the Constitution at all, and one created and embued with governmental power merely by a statute enacted by the Legislature, a body not possessing and therefore unable to delegate any general executive power. Tex. Const.Ann. art. IV, § 1; *see Brand v. San Patricio County,* 80 S.W.2d 460, 461 (Tex.Civ.App.1935, writ ref'd). Moreover, the opinion in *Denison v. State, supra,* is quite clear and emphatic on the point that unless the Legislature has created a public office and prescribed some different manner for the filling of a vacancy therein, then art. IV, § 12 applies and governs the filling of the vacancy.

Concluding our discussion of the matters contemplated by art. IV, § 12, we observe that the only. *express* constitutional exclusions to its provisions are included within the terms of the section itself, that is, vacancies occurring in the Legislature and the making of temporary appointments while the Senate is not in session. Finally, § 12 provides that any appointment to elective office shall continue only to the next general election of State and district officers.

Turning then for comparison purposes to art. V, § 28, one observes that it provides simply that vacancies in superior judicial offices "shall be filled by the Governor until the next succeeding general election ...," making no mention of the requirement of Senate confirmation. Implicit therein, however, is that such judicial vacancies shall be filled in the sole manner allowed by the Constitution for the "filling" of vacan-

cies in State or district offices, that is, by an exercise of the Governor's power of appointment, a power and process supplied, delineated, conditioned, and governed by art. IV, § 12: nomination to the Senate if it is in session, followed by confirmation and gubernatorial appointment, or by rejection and another nomination; or when the Senate is not in session by unilateral gubernatorial appointment, with a requirement of nomination of the "appointee" within the first ten days of the Senate's next session, if the office is elective and a general election should not intervene before the next session of the Senate. In any case, the general principle of checks and balances, to prevent excesses, is served, by the sovereign acting indirectly through the cooperation of the Governor and the Senate, in the one class of cases, and directly through the election process in the other.

Thus, the prerequisite to Sturns' theory is not disclosed by a comparison of the two constitutional provisions in issue— there is no *conflict* between art. IV, § 12, conferring the appointing power upon the Governor and prescribing the mode of its exercise, and art. V, § 28, providing by necessary implication that the Governor's appointing power shall be utilized to fill certain judicial vacancies. We hold that Sturns' theory is totally without merit because it is an argument solely from silence, that is, because art. V, § 28 does *not* state that the advice and consent of the Senate are required, it is in conflict with art. IV, § 12 which *does* specifically require such action by the Senate. We think, however, that this circumstance merely lends conclusive force to the proposition that no conflict is possible, and certainly not found in the express terms of the two constitutional provisions, leaving full scope for the operation of the fundamental rule of construction that no conflict was intended and that the two provisions were meant to operate in conjunction.

Not only is our construction of the two provisions mandated by the express terms thereof, but we find no indication that any amendment to art. V, since its original adoption, was intended to effectuate a departure from the established practice which has prevailed between 1876 and the present, whereby the Governor has routinely utilized art. IV, § 12 for the filling of vacancies in superior judicial offices, as well as other vacancies in State and district offices, and it has not been suggested to us that any Governor has ever filled a judicial vacancy by any other mode of appointment, a usage which would have the effect of removing any doubt in the event a conflict did exist in the two constitutional provisions. *Purcell v. Lindsey,* 158 Tex. 541, 314 S.W.2d 283, 284 (Tex.1958); *Walker v. Baker,* 145 Tex. 121, 196 S.W.2d 324, 327 (Tex. 1946); *Lufkin v. City of Galveston, supra.* Indeed, even Sturns' claim of title to the office arises solely from Governor Clements' attempt to follow such usage. Moreover, the fact that art. V, § 28 has been twice amended since 1876 with no provision for a contrary mode of gubernatorial appointment of superior judicial officers, suggests in the strongest terms that no departure from the usage was intended. We believe, of course, that no conflict exists and that the usage results not from a resolution of any doubt about the power of the Senate, but merely from the Senate and the Governor following the clear and unambiguous instruction contained in the two constitutional provisions considered together.

The rule of construction for which Sturns contends in the present case is "[a] rule of last resort for the construction of constitutional amendments." *Farrar v. Board of Trustees,* 150 Tex. 572, 243 S.W.2d 688, 692 (Tex.1951). As in *Farrar,* "[w]e see no conflict between the two [provisions] under consideration," and we may not struggle to find and inject such a conflict when it is not suggested by the words of the two provisions.

We hold that Sturns was not entitled to a declaratory judgment that Senate confirmation of his nomination was not required; we hold to the contrary that such confirmation was required. We need not, therefore, reach appellants' remaining points of error.

The judgment of the trial court is accordingly reversed and we render judgment that Sturns take nothing by his suit.