The STATE of Texas ex rel. Karen ANGELINI, Relator,

v.

The Honorable Phil HARDBERGER, Respondent.

No. 96–0643.

Supreme Court of Texas.

Argued Aug. 13, 1996.

Decided Aug. 30, 1996.

Randall Buck Wood, Austin, Robert J. Myers, San Antonio, Doug W. Ray, Austin, for Relator.

Stuart W. Bowen, Stephen P. Koebele, Dan Morales, Austin, for Respondent.

ENOCH, Justice, delivered the opinion of the Court in which PHILLIPS, Chief Justice, and HECHT, CORNYN, OWEN and ABBOTT, Justices, join.

This is an original proceeding for writ of quo warranto. The State of Texas, on relation of the Governor's appointee, Karen Angelini, seeks a declaration that the Honorable Phil Hardberger has vacated his office as Justice of the Court of Appeals for the Fourth District of Texas. Because we conclude on constitutional grounds that Justice Hardberger has not yet vacated his office, and that there will be no vacancy in his office until the effective date of his resignation, we deny the writ of quo warranto.

By letter dated June 20, 1996, Justice Hardberger advised the Governor of his intention to resign his office effective January 1, 1997. The term of Justice Hardberger's office does not expire until December 31, 2000, but Justice Hardberger is a candidate for election to the office of Chief Justice of the Fourth Court of Appeals. Because he is unopposed, Justice Hardberger will be elect-ed in the November general election and will be entitled to take office on January 1, 1997, for a full term of six years. Believing Justice Hardberger's resignation to be effective by statute eight days after the Governor received the resignation, or June 28, 1996, the Governor appointed Karen Angelini to fill the unexpired term of Justice Hardberger's office, until the next general election. *See* TEX.ELEC.CODE § 201.023. Justice Hardberger has refused to vacate his office. By writ of quo warranto, the State seeks to have the office declared vacant so that Angelini may assume the duties of the office.

## I

■ A writ of quo warranto is an extraordinary remedy available to determine disputed questions about the proper person entitled to hold a public office and exercise its functions. *State ex rel. R.C. Jennett v. Owens,* 63 Tex. 261, 270 (1885). The Legislature has conferred original jurisdiction on this Court to issue writs of quo warranto. TEX.GOV'T CODE § 22.002(a); TEX. CONST. art. V, § 3. We have on two occasions in the past required parties seeking quo warranto to first pursue their claim in district court. *See State ex rel. Todd v. Martineau,* 141 Tex. 363, 171 S.W.2d 856 (1943) (dismissing quo warranto to determine whether individual was entitled to office of Special Judge of the 94th District Court); *State ex rel. McCall v. Manry,* 118 Tex. 449, 16 S.W.2d 809 (1929) (dismissing quo warranto to determine person entitled to hold office of district judge).

■ Here we are presented with compelling reasons to exercise our discretion to decide this matter without first requiring presentation to the district court. First, time is of the essence because two candidates for Justice Hardberger's unexpired term on the Fourth Court of Appeals have been placed on the ballot for the general election in November. The candidates should know their status as soon as possible. Second, the State contends that Justice Hardberger is improperly holding over in office and that his actions as Justice on the Fourth Court of Appeals are invalid. Finally, there are no disputed issues of fact. In such circumstances, it is not unusual for us to exercise

our original jurisdiction to issue extraordinary writs without requiring that the issues first be determined by the lower courts. *See LaRouche v. Hannah*, 822 S.W.2d 632, 633–34 (Tex.1992) (exercising original jurisdiction in election mandamus); *Sears v. Bayoud*, 786 S.W.2d 248, 249–50 (Tex.1990) (same). To delay this case for presentation to the trial court and appeal to the court of appeals would be unfair to all concerned.

## II

■ The Texas Constitution gives to the Governor the power to fill by appointment vacancies in higher judicial offices. Article V, Section 28 of the Constitution provides:

> Vacancies in the office of judges of the Supreme Court, the Court of Criminal Appeals, the Court of Civil Appeals [1] and the District Courts shall be filled by the Governor until the next succeeding General Election; ...

TEX. CONST. art. V, § 28. *See also* TEX. CONST. art. V, § 2 (providing that a vacancy in the office of Chief Justice or Justice of the Supreme Court is to be filled by appointment by the Governor "until the next general election for state officers"); *id.* § 4 (providing that a vacancy in the office of Judge of the Court of Criminal Appeals is to be filled by appointment by the Governor "until the next succeeding general election"). Article IV, Section 12 also gives the Governor the power to fill by appointment vacancies in state or district offices:

> Sec. 12. (a) All vacancies in State or district offices, except members of the Legislature, shall be filled unless otherwise provided by law by appointment of the Governor.
>
> (b) An appointment of the Governor made during a session of the Senate shall be with the advice and consent of two-thirds of the Senate present.
>
> . . . .
>
> (g) Appointments to vacancies in offices elective by the people shall only continue until the next general election.

> (h) The Legislature by general law may limit the term to be served by a person appointed by the Governor to fill a vacancy in a state or district office to a period that ends before the vacant term otherwise expires or, for an elective office, before the next election at which the vacancy is to be filled, if the appointment is made on or after November 1 preceding the general election for the succeeding term of the office of Governor and the Governor is not elected at that election to the succeeding term.
>
> (i) For purposes of this section, the expiration of a term of office or the creation of a new office constitutes a vacancy.

TEX. CONST. art. IV, § 12. As is plain from the text of Article V, Section 28, and Article IV, Section 12(g), the Constitution grants the Governor the power to make interim appointments to the next succeeding general election.

Justice Hardberger has indicated in his resignation letter to the Governor that he intends to remain in office and to fully discharge his duties until January 1, 1997. Barring some change in circumstances, Justice Hardberger's office will become vacant upon the effective date of his resignation, January 1, 1997.

## A

The State claims that Justice Hardberger, whatever his expressed intent, cannot deliver his letter of resignation in June 1996, to be effective January 1, 1997, because the Texas Election Code creates a vacancy in his office no later than eight days after his letter of resignation is received by the Governor. The State points to section 201.023 of the Texas Election Code, which provides:

> If an officer submits a resignation, *whether to be effective immediately or at a future date*, a vacancy occurs on the date the resignation is accepted by the appropriate authority or on the eighth day after the date of its receipt by the authority, whichever is earlier.

---

**1.** The Courts of Civil Appeals are now the Courts of Appeals. Article V, Section 6 provides that all "constitutional and statutory references to the Courts of Civil Appeals shall be construed to mean the Courts of Appeals." TEX. CONST. art. V, § 6.

TEX.ELEC.CODE § 201.023 (emphasis added). In short, the State would have us read section 201.023 as ousting Justice Hardberger from his office months before he intends to vacate the office. Neither the statute nor the Texas Constitution permits such a construction.

Section 201.023 does not create an actual vacancy in office. That section and others in Subchapter 201(b) deeming vacancies for purposes of Title 12 of the Election Code are limited in application to that title. Section 201.021 specifically states:

> For purposes of this title, a vacancy in office occurs at the time prescribed by this subchapter.

TEX.ELEC.CODE § 201.021. (emphasis added). On its face, section 201.023 expressly defines the time at which a vacancy occurs after resignation only for purposes of initiating the electoral process to fill that vacancy.

The dissent contends that section 201.023 could reasonably be read to oust Justice Hardberger from office because of his announced prospective resignation. However, under that reading, section 201.023 would unconstitutionally restrict the tenure of a duly elected officeholder. Having won election to the court in 1994, Justice Hardberger is entitled to serve for six years unless he dies, is constitutionally removed from office, or leaves of his own accord. While an appellate justice in this State may be constitutionally removed for several reasons, such as willful or persistent violation of rules promulgated by the Supreme Court, see TEX. CONST. art. V, § 1–a(6), incompetence in performing the duties of the office, id., willful violation of the Code of Judicial Conduct, id., or accepting another office of civil emolument, see TEX. CONST. art. XVI, § 40; Pruitt v. Glen Rose Indep. Sch. Dist., 126 Tex. 45, 84 S.W.2d 1004, 1006 (1935), submitting a future resignation is not one of them. If his service is ended by voluntary resignation, he controls the right to decide when he leaves. See State ex rel. Dosland v. Holm, 202 Minn. 500, 279 N.W. 218, 220 (1938). The Constitution permits his service to be extended, see TEX. CONST. art. XVI, § 17, but not truncated. Cf. Opinion of the Justices of the Supreme Judicial Court, 343 A.2d 196, 203 (Me.1975)

("When the Constitution fixes the tenure of a civil office, it is beyond the power of the Legislature to affect the tenure."); Fitzgerald v. Kuppinger, 163 Neb. 286, 79 N.W.2d 547, 552 (1956) (constitutional provision stating circumstances under which vacancy exists are exclusive and legislature has no power to add other or different grounds); State ex rel. Thompson v. Seigler, 230 S.C. 115, 94 S.E.2d 231, 233 (1956) (legislature cannot provide conditions for removal of constitutional officer unless authority for such action is found in the constitution); 67 C.J.S. Officers § 117 (1978) ("Ordinarily, the legislature cannot provide for the removal of officers protected by the constitution, unless authority for such action is found in the constitution").

In Eades v. Drake, 160 Tex. 381, 332 S.W.2d 553 (1960), we specifically rejected as unconstitutional an attempt by the Legislature to limit a judge's constitutionally prescribed term of office. There, an attorney sought a writ of mandamus requiring placement of his name on the primary ballot as a candidate for district judge two years after the first judge was elected to serve in that district court. The statute creating the district court provided that the first elected judge would serve a two-year term. The Court denied the writ, holding that the part of the statute calling for a two-year term was void because it violated the constitutional provision for elective four-year terms for judges of permanent constitutional district courts. Eades, 332 S.W.2d at 556.

More recently, we rejected as unconstitutional a similar attempt by the Legislature to limit the constitutional terms of office of Justice on the Fourteenth and First Courts of Appeals by calling for drawing lots for terms in newly created offices. See Draughn v. Brown, 651 S.W.2d 728, 729 (Tex.1983). There, the Legislature, by statute, created three new offices of Justice on both courts of appeals and provided that the terms of office of those first elected to the office were to be determined by lot for either a two-year, four-year, or six-year term. The newly elected justices sought mandamus directing that the Chief Justices of the two courts refrain from drawing lots for terms of office. Relying on

*Eades,* we granted mandamus. We held that the statute calling for the drawing of lots for terms of office was void because it violated the constitutional provision for elective six-year terms for court of appeals justices. *Id.* at 730. Both *Eades* and *Draughn* suggest that section 201.023 may not constitutionally be read to oust Justice Hardberger from his office before the effective date of his resignation.

**B**

■ On the other hand, reading section 201.023, as urged by Justice Hardberger, as "creating" a vacancy only for purposes of triggering an election runs afoul of another provision of the Texas Constitution. Section 201.023 would deem a vacancy for purposes of triggering an election before there is an actual vacancy in office. In these circumstances, section 201.023 would violate Article V, Section 28 of the Texas Constitution, which mandates that "[v]acancies ... shall be filled by the Governor until the next succeeding General Election." TEX. CONST. art. V, § 28.

■ When Justice Hardberger actually leaves office, he will vacate his office in the constitutional sense. *See Leander Indep. Sch. Dist. v. Cedar Park Water Supply Corp.,* 479 S.W.2d 908, 912 (Tex.1972) (words used in constitution are to be interpreted as the people generally understood them). *Cf. Youngblood v. Marr,* 253 Ind. 412, 254 N.E.2d 868, 871–72 (1970) (legislature cannot declare a vacancy under the constitution when in fact no vacancy exists); *State ex rel. Foughty v. Friederich,* 108 N.W.2d 681, 690–91 (N.D.1961) (legislature may not create a vacancy in the constitutional sense when one does not naturally exist); *Friedman v. Lewis,* 143 Pa.Cmwlth. 367, 598 A.2d 1361, 1363 (1991) (words in constitution must be given their common or popular meaning, and the plain meaning of "vacancy" is "[a] place or position which is empty, unfilled, or unoccupied"); *State ex rel. Witcher v. Bilbrey,* 878 S.W.2d 567, 573–74 (Tenn.Ct.App.1994) ("[T]he Constitution of Tennessee uses the term 'vacancy' in its ordinary sense. ... Thus, a vacant office is one that is unoccupied or without an incumbent."). When the

office is vacant, the Governor has the exclusive constitutional authority under the Judicial Article to appoint a successor to serve until the next general election. By deeming a vacancy to occur when Justice Hardberger merely *submits* his resignation, thereby mandating an election to fill the vacancy that has not yet occurred, section 201.023 infringes upon that power.

Because "[t]he Texas Constitution suffers from a surplus of provisions for filling judicial vacancies," 1 GEORGE D. BRADEN, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 478 (1977), it is possible that the Governor's appointment authority could be modified by some other constitutional grant to the Legislature. The only other provision of the Constitution that speaks to the appointment of court of appeals justices is located in the Executive Article, which provides in part:

(a) All vacancies in State or district offices, except members of the Legislature, shall be filled *unless otherwise provided by law* by appointment of the Governor.

(b) An appointment of the Governor made during a session of the Senate shall be with the advice and consent of two-thirds of the Senate present.

TEX. CONST. art. IV, § 12(a, b) (emphasis added). By including the language "unless otherwise provided by law," section 12(a) subjects the Governor's appointment power to at least some degree of legislative modification. One could argue, perhaps, that the Legislature may restrict the Governor's appointment power by enacting election laws deeming a vacancy to occur prior to the true vacancy.

The potential conflict between Article IV, Section 12 and Article V, Section 28 has been examined before. In one early case, a court of appeals stated in *dicta* that the Judicial Article provision is controlling because it deals specifically with the appointment of judges, while the Executive Article provision deals generally with state and district officers. *See State ex rel. Peden v. Valentine,* 198 S.W. 1006, 1009 (Tex.Civ.App.—Fort Worth 1917, writ ref'd). Later authorities have employed a more subtle analysis. In *White v. Sturns,* 651 S.W.2d 372 (Tex.App.—

Austin 1983, writ ref'd n.r.e.), the plaintiff had been appointed district judge by an outgoing governor, but prior to Senate confirmation the new Governor had obtained a return of the nomination and had made a new appointment. Plaintiff sought to have himself declared judge on the basis that Article V, Section 28 did not require Senate confirmation of judicial appointees. The court of appeals rejected this argument on several grounds. It looked to the consistent practice of all governors in submitting judicial appointments for confirmation, as well as to the Legislature's failure to clarify the issue by constitutional amendment despite two other changes to Section 28 since 1876. *Id.* at 376. Its primary holding, however, was that no conflict existed between the two constitutional provisions because the confirmation requirement in Section 12 was an additional, not a contradictory, requirement:

> We hold that Sturns' theory is totally without merit because it is an argument solely from silence, that is, because art. V, § 28 does *not* state that the advice and consent of the Senate are required, it is in conflict with art. IV, § 12 which *does* specifically require such action by the Senate. We think, however, that this circumstance merely lends conclusive force to the proposition that no conflict is possible, and certainly not found in the express terms of the two constitutional provisions, leaving full scope for the operation of the fundamental rule of construction that no conflict was intended and that the two provisions were meant to operate in conjunction.

*Sturns,* 651 S.W.2d at 376 (emphasis in original). Two attorney general opinions accord with this holding. *See* Op.Tex.Att'y Gen. Nos. JM–1161(1990), O–1092 (1939).

Texas law does not support the conclusion that the "unless otherwise provided by law" language of Article IV, Section 12 permits the Legislature to foreclose the Governor's appointment power under the circumstances of this case. In *Denison v. State,* 61 S.W.2d 1017 (Tex.Civ.App.—Austin), *writ ref'd,* 122 Tex. 459, 61 S.W.2d 1022 (1933), the court examined whether the Legislature could alter the requirement in Article IV, Section 12

that the Governor's appointees be confirmed by two-thirds of the Senate. The court of appeals answered no, concluding that the "otherwise provided by law" language only allowed the Legislature to change the *appointing authority* for an office, not the other requirements of Section 12, and to that extent only for offices not provided for in the Constitution. *Id.* at 1020. Thus, while the Legislature could have provided that members of the Highway Commission be appointed by someone other than the Governor, it could not do so for appellate judges. This Court refused to grant writ, expressly adopting the first part of the court of appeals' holding in its per curiam opinion. *Denison v. State,* 122 Tex. 459, 61 S.W.2d 1022 (1933).

*Denison* prohibits the Legislature from circumventing the Governor's appointment power by redefining the meaning of the constitutional term "vacancy." In the teeth of a specific constitutional provision mandating that the Governor shall fill vacancies in this office by appointment, the Legislature cannot cede to a resigning justice the discretion to time that resignation in a manner that instead fills that vacancy by election. When read to deem a vacancy for purposes of election, section 201.023 unconstitutionally abridges the Governor's constitutional power of appointment when an officeholder tenders a resignation before a general election to be effective after the election.

### III

### A

In pressing their respective arguments, both sides look to this Court's decision in *Texas Democratic Executive Comm. v. Rains,* 756 S.W.2d 306 (Tex.1988). There, the Honorable Rudy Esquivel, also a justice of the Fourth Court of Appeals, tendered his resignation in the middle of his term in June of an even-numbered year, effective on January 1 of the next year. In so doing, he asserted that an election for his successor was triggered under section 201.023, which at that time did not provide a deadline for acceptance by the Governor.[2] Governor Wil-

---

**2.** Section 201.023 then provided:

    If an officer submits a resignation, whether to

be effective immediately or at a future date, a

liam P. Clements refused to accept Justice Esquivel's resignation, claiming only that without an acceptance the election process was not triggered. The Court rejected that argument, holding that the Governor had no choice but to accept the resignation, and that consequently a vacancy existed as a matter of law under the Election Code. Justice Hardberger claims that *Rains* controls in all particulars, while the State asserts that it is inapplicable because the Governor never asserted that Justice Esquivel's letter created a vacancy prior to the prospective resignation date.

Both parties to this case, like the parties and the Court in *Rains,* have proceeded on the unexamined assumption that the Legislature may deem a vacancy to occur when a resignation is submitted for the purposes of triggering an election. The focus in *Rains* was on whether the Governor had any discretion to accept that resignation, while the focus here has been on whether the legislatively-triggered vacancy was real or merely constructive. Both parties' arguments, we think, have missed the critical constitutional question. That is, whether section 201.023 unconstitutionally abridges the Governor's appointment power by deeming a vacancy in office for purposes of triggering an election *before* there is an actual vacancy in office. We conclude that it does in the circumstances presented here.

Had the constitutional issue been brought to our attention in that case, or had it been uncovered by us during our consideration in *Rains,* we would have had to address and resolve the issue at that time. *See Eades,* 332 S.W.2d at 556–57 (mandamus to place candidate on ballot denied when statute unconstitutionally limited term of office because there could be no legal election for that office). Merely because that did not happen, we surely are not foreclosed from examining and applying our Constitution now under any rational principle of judicial construction.

### B

The concurring opinion rejects our conclusion that section 201.023 unconstitutionally

vacancy occurs on the date the resignation is

infringes on the Governor's appointment power, arguing that "the appointment power of the governor does not trump the people's right to elect their judges." 932 S.W.2d at 496. This broad generalization is not a principled constitutional conclusion. While the Constitution does indeed provide for the election of judges, it also authorizes the Governor to appoint interim successors when a judicial seat becomes vacant. Section 28 clearly specifies the circumstances for, and the duration of, such interim appointments. This constitutional language cannot be trumped by resort to some unarticulated preference for elections, deduced not from a particular provision but from the spirit of the document as a whole. Had the framers of our Constitution wanted to limit the Governor's appointment powers in these circumstances, they could have provided for special elections to fill vacant judicial seats, as they did for vacant legislative seats, *see* TEX. CONST. art. III, § 13; art. IV, § 12(a), and as our neighboring state has indeed done for judges. *See* LA. CONST. art. V, § 22 (providing for special elections to fill vacancies in judicial offices).

\*       \*       \*       \*       \*       \*

We hold that the Constitution does not empower the Governor to appoint Karen Angelini to Justice Hardberger's unexpired term as of June 28, 1996. Section 201.023 of the Election Code does not oust Justice Hardberger out of office before the date on which he intends to vacate his office, January 1, 1997. The Constitution grants to the Governor the power to appoint a successor to Justice Hardberger's unexpired term of office when that office becomes vacant on January 1, 1997.

We deny the writ of quo warranto.

SPECTOR, Justice, joined by GONZALEZ, Justice, concurring.

I concur in the majority's judgment, but I cannot join its holding that section 201.023 unconstitutionally infringes the Governor's

accepted by the appropriate authority.

appointment power. That conclusion is inconsistent with sound principles of construction and a recent decision of this Court. Without a constitutional amendment, the appointment power of the Governor does not trump the people's right to elect their judges.

The majority holds that Justice Hardberger's prospective resignation does not create a vacancy in his office for purposes of triggering an election, at least until November 1998. 932 S.W.2d at 495. That holding cannot be reconciled with this Court's decision in *Texas Democratic Executive Comm. v. Rains,* 756 S.W.2d 306 (Tex.1988). *Rains* presented a set of facts virtually identical to this case. In *Rains,* a justice of the Fourth Court of Appeals submitted a prospective resignation on June 21st, more than four months before the November general election. *Id.* at 306. Here, Justice Hardberger, also of the Fourth Court of Appeals, submitted his prospective resignation on June 20th, more than four months before the November general election. The resignation of the justice in *Rains* was to be effective January 1, 1989, following the November 1988 general election. *Id.* Likewise, Justice Hardberger's resignation is to be effective January 1, following the general election. Our precise holding in *Rains* was that the Governor had no discretion to refuse to accept a resignation so "that for the limited purpose of triggering the electoral process, *a vacancy in [the resigning justice's] office exists as a matter of law."* *Id.* at 307 (emphasis added). The majority's opinion today reaches exactly the opposite result—as a matter of law, no vacancy exists for purposes of triggering an election. *See* 932 S.W.2d at 495.

Even apart from *Rains,* I believe that today's holding that section 201.023 is unconstitutional as applied in this case is unwarranted. An "exercise of legislative authority is entitled to great weight, and we cannot hold it without constitutional warrant unless it is plainly so beyond a reasonable doubt." *Great S. Life Ins. Co. v. City of Austin,* 243 S.W. 778, 784 (Tex.1922). "[I]t is the *duty* of the courts to construe a statute in such a way as to avoid repugnancy to the Constitution." *Key W. Life Ins. Co. v. State Bd. of Ins.,* 163 Tex. 11, 350 S.W.2d 839, 849 (1961) (emphasis

added). The majority's opinion fails in that duty.

As we recognized in *Rains,* Title 12 of the Election Code, including section 201.023, "clearly was intended to protect the right of the voters of this state to choose their elective officers." *Rains,* 756 S.W.2d at 307. The source of that right, like the Governor's appointment power, is our Constitution. *See* TEX. CONST. art. V, §§ 2, 4, 6, 15, 18(b). While previous constitutions provided for the appointment of judges by the Governor, *see* TEX. CONST. art. IV, § 5 (1861); art. V, §§ 2, 6, 19 (1869), our current constitution confers that power upon the people. *See* TEX. CONST. art. V, §§ 2, 4, 6, 7, 15, 18(b); *see* 1 GEORGE D. BRADEN ET AL., THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 377 (1977). The majority acknowledges that the Constitution does not define vacancy and agrees that section 201.023 does not even speak to the Governor's appointment power. Nevertheless, the majority holds the definition adopted by the Legislature for purposes of triggering an election unconstitutional because of its incidental effect.

As long as the method established by our Constitution for selecting judges remains unchanged, section 201.023 should be upheld as a legitimate effort by the Legislature to ensure that the people may exercise their most fundamental constitutional right at the earliest opportunity. It seems clear that our Constitution establishes the gubernatorial appointment as a stopgap measure; appointees serve only *"until* the next succeeding General Election." TEX. CONST. art. V, § 28 (emphasis added); *see also* TEX. CONST. art. V, §§ 2, 4. The majority's approach thwarts the preference in our current Constitution for the election of judicial officers. At a minimum, the incidental impact of section 201.023 on the Governor's appointment power does not establish the unconstitutionality of the statute "plainly ... beyond a reasonable doubt." *Great S. Life Ins. Co.,* 243 S.W. at 784.

The relief the State requested was a holding that Justice Hardberger's delivery of his prospective resignation triggered the Governor's power to appoint a successor to serve only *until* the November general election. Consequently, the contention that section 201.023 is unconstitutional under the circumstances of this case, although mentioned in

passing, was neither briefed nor argued. Both major political parties have nominated candidates to be placed on the November 1996 ballot. The majority's decision makes that election a nullity and allows the Governor's appointee to serve until the November 1998 election.

I would hold that Justice Hardberger's prospective resignation triggered an election under section 201.023 of the Election Code. Because, however, I agree with the majority's holding that it did not create a present vacancy for appointment purposes, I concur in the judgment of the Court and would deny the writ of quo warranto.

BAKER, Justice, dissenting.

## I. The Parties' Contentions

The parties agree that Justice Hardberger's resignation letter created a vacancy for purposes of the Election Code, thus triggering an election this November for the remaining four years of Justice Hardberger's term. They dispute, however, whether the letter, despite Justice Hardberger's expressed intent to have his resignation be effective January 1, 1997, created a constitutional vacancy eight days after its receipt, thus allowing the Governor to appoint an immediate successor. *See* TEX. CONST. art. V, § 28.

The State argues that an elected official's resignation letter creates a vacancy within eight days of its receipt regardless of its purported effective date. Justice Hardberger argues that the term "vacancy" in section 201.023 merely defines when a vacancy occurs for purposes of the electoral process. *See* TEX.ELEC.CODE § 201.021 (*"[f]or purposes of this title,* a vacancy in office occurs at the time prescribed by this subchapter.") (emphasis added). I am convinced that to accept Justice Hardberger's interpretation of the Election Code would unconstitutionally infringe on the Governor's power of appointment. Accordingly, I would grant the State's request for quo warranto relief.

## II. Unassigned Unconstitutionality

Beyond my disagreement with Justice Hardberger's position, I question the Court's method of resolving this dispute. The Court's opinion considers issues and decides this case on grounds the parties did not raise, brief or argue. Appellate courts, including this Court, should not decide cases on grounds not raised, briefed or argued. *See Commercial Cas. Ins. Co. v. Hamrick,* 94 S.W.2d 421, 423 (Tex.1936); TEX.R.APP.P. 74(f) and (g).

## III. Constitutional and Statutory Construction

I agree with the concurring opinion that the Court's "conclusion is inconsistent with sound principles of [statutory] construction." 932 S.W.2d at 495 (Spector, J., concurring). Despite the fact that neither the State nor Justice Hardberger argued that section 201.023 of the Texas Election Code is unconstitutional, the Court declares it so. When evaluating a statute, the Government Code requires that we presume the Legislature has acted constitutionally. TEX.GOV'T CODE § 311.021; *Travelers Indem. Co. v. Fuller,* 38 Tex.Sup.Ct.J. 298, 892 S.W.2d 848, 850 (1995). This Court's function is not to search for statutory defects. Instead, it is the litigants' burden to demonstrate constitutional infirmity. *Fuller,* 892 S.W.2d at 850. Our duty is to construe legislation in a manner that, if at all possible, avoids declaring a statute unconstitutional. *See Key W. Life Ins. Co. v. State Bd. Of Ins.,* 163 Tex. 11, 350 S.W.2d 839, 849–50 (1961); *State v. City of Austin,* 160 Tex. 348, 331 S.W.2d 737, 746 (1960). I believe we can discharge that duty in this case.

## IV. The Constitutional Scheme and the Statutory Implementation

Article V, Section 28 of the Texas Constitution provides:

> Vacancies in the office of judges of the Supreme Court, the Court of Criminal Appeals, the Court of Civil Appeals and the District Courts shall be filled by the Governor until the next General Election.

Under this authority, Governor Bush appointed Angelini to fill the vacancy in Place 4 on the Fourth Court of Appeals. The Election Code provides that a vacancy in office may occur as the result of any one of eight

events: (1) death, § 201.022; (2) resignation, § 201.023;[1] (3) removal, § 201.024; (4) acceptance of another office that may not be held simultaneously, § 201.025; (5) declaration of ineligibility, § 201.026; (6) creation of a new office, § 201.027; (7) if the election was won by a deceased or ineligible candidate, § 201.028; and (8) if an officer-elect declines to qualify for office, § 201.029.

Only one of these provisions, section 201.023 of the Election Code, concerns a vacancy created by a prospective resignation. It provides:

> If an officer submits a resignation whether to be effective immediately or at a future date, a vacancy occurs on the date the resignation is accepted by the appropriate authority or on the eighth day after the date of its receipt by the authority, whichever is earlier.

The Legislature amended section 201.023 following our decision in *Texas Democratic Executive Comm. v. Rains,* 756 S.W.2d 306 (Tex.1988). In *Rains,* a Justice of the Fourth Court of Appeals, Justice Rudy Esquivel, submitted a prospective resignation, to be effective January 1, 1989. Governor William P. Clements, Jr. received the resignation on June 21, 1988. However, Governor Clements declined to accept it, choosing instead to wait until November 1988, which would have allowed him to appoint Justice Esquivel's successor rather than have his successor chosen at the November general election.

The Secretary of State also refused to certify Ron Carr as the Democratic candidate for Justice Esquivel's unexpired term in the November general election. The Secretary of State claimed that he could not certify Carr's candidacy in the absence of a "vacancy" in office. He asserted that no vacancy existed until the Governor accepted Esquivel's resignation. Relators sought to compel the Governor to accept Esquivel's

resignation immediately, contending that given an otherwise proper resignation, the Governor had no discretion but to accept it. We agreed. *Rains,* 756 S.W.2d at 307.

The pivotal holding in *Rains* was that the Governor could not unilaterally delay acceptance of an officeholder's resignation to manipulate the method—whether by election or appointment—by which an officeholder's successor is chosen. In 1989, the Legislature effectively codified *Rains* when it amended section 201.023 of the Election Code to provide that a resignation must be accepted no later than the eighth day after it is received.

While the Legislature clearly intended by section 201.023 to limit the Governor's ability to delay acceptance of a tendered resignation for essentially political purposes, the question before us is the other side of that coin: whether an officeholder may resign prospectively to deny the Governor an appointment and force an election to choose a successor.

It is true that many Texas judges—fifty-three percent of those currently in office—are chosen by popular, partisan elections. Forty-seven percent of the judges currently in office were appointed by a governor. OFFICE OF COURT ADMINISTRATION (information on file with Office of General Counsel). Our Constitution has expressly provided since 1876 that the Governor's appointees fill vacancies in judicial offices until the next general election. Rather than indicating a preference for one method of judicial selection over the other, our Constitution treats these as alternative methods, each available under different circumstances. *See generally,* Cornyn, *Ruminations on the Nature of Texas Judging,* 25 ST. MARY'S L.J. 367, 372–373 (1993).

It is also telling that the Constitution carves out a legislative exception to the Governor's general authority under Article IV, Section 12 to appoint state and district offi-

---

1. By granting quo warranto, we would not "oust" Justice Hardberger from office. 932 S.W.2d at 495. He chose to resign, "of his own accord", in the face of § 201.023. 932 S.W.2d at 492. Section 201.023 works in harmony with our Constitution. It very simply deems a vacancy to exist, eight days after the Governor receives a resignation, for the purposes of initiating the electoral process to fill the vacancy. *See Texas Democratic Executive Comm. v. Rains,* 756 S.W.2d 306, 307 (Tex.1988). The Constitution provides the method for filling a vacancy in the meantime. *See* TEX. CONST. art. V, § 28; *see also* TEX. CONST. art. XVI, § 17 (allowing for holdover in office until successor is qualified).

cers. The Governor has no authority to appoint legislators; they must be chosen by special election. TEX. CONST. art. IV, § 12. If the framers of our Constitution had determined to prefer judicial elections to interim appointments by the Governor, they could have readily provided for special elections for judicial vacancies. Instead, they chose a method combining both elections and gubernatorial appointments by the Governor, again, depending on the timing of a vacancy.

If any vacancy created by section 201.023 is solely for the purposes of an election, as Justice Hardberger contends, I believe the statute cannot be constitutionally implemented because such a statute would abridge the Governor's constitutional appointment power. The Legislature has broad lawmaking power, but that power is circumscribed by express or implied restrictions contained in or necessarily arising from the Constitution itself. *See Government Serv. Ins. Underwriters v. Jones,* 368 S.W.2d 560, 563 (Tex.1963). Under Article II, Section 1, our Constitution's express separation of powers provision, the Legislature cannot abridge or otherwise impair the constitutional prerogatives of the Executive Department. *See, e.g., Rose v. State,* 752 S.W.2d 529, 535 (Tex.Crim.App. 1989); *State ex rel. Smith v. Blackwell,* 500 S.W.2d 97, 104 (Tex.Crim.App.1973); *Walker v. Baker,* 145 Tex. 121, 196 S.W.2d 324, 327 (1946). Because there is no constitutional basis for favoring elections over appointments, the Legislature cannot do so by statute, which is exactly what Justice Hardberger's interpretation of section 201.023 would allow.

If a plausible alternative construction of a statute exists that will allow a court to avoid constitutional problems, we will adopt that construction. *Public Citizen v. United States Dep't of Justice,* 491 U.S. 440, 442, 109 S.Ct. 2558, 2560–61, 105 L.Ed.2d 377 (1989); *Key W. Life Ins. Co.,* 350 S.W.2d at 848–49. We should thus assume that the Legislature intended to treat the resigning officeholder and the Governor with parity. Otherwise, we would be forced to the conclusion that the Legislature intended to unconstitutionally elevate the power of the officeholder to determine whether a successor will be chosen by an election and thus deny the Governor a power the Constitution itself confers. *See, e.g., Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 527–30, 109 S.Ct. 1981, 1994–96, 104 L.Ed.2d 557 (1989) (Scalia, J., concurring). Framing the issue this way, as I believe we must, I would hold that Justice Hardberger vacated his office effective June 28, 1996.

Further, to accept Justice Hardberger's construction of section 201.023 leads to at least one other difficulty, one that can be avoided by construing the statute as I suggest. *See State v. Standard Oil Co.,* 130 Tex. 313, 107 S.W.2d 550 (1937) (stating that a court must construe a statute in a way that makes all relevant laws harmonious). Justice Hardberger, if his prospective resignation had been otherwise effective, intended to resign on January 1, 1997. Texas Government Code section 601.004, prevents that prospective date from being effective. That section provides:

> Persons elected to unexpired terms in the various state ... offices ... shall be entitled to qualify and assume the duties of their respective offices ... immediately following the official canvass of the results of the election at which they were elected, and they shall take office as soon thereafter as possible.

In other words, the candidate elected at the November 5, 1996 general election may, if he or she so chooses, assume office before Justice Hardberger intends to depart on January 1, 1997. *See Texas Democratic Executive Comm. v. Rains,* 756 S.W.2d 306, 309 (Tex.1988) (Phillips, C.J., dissenting). Under these circumstances, Justice Hardberger's contention that he has the unilateral right to determine the timing of his resignation is plainly untenable. Also, our consideration of this potential result, as Justice Hardberger argues and the Court appears to agree, is not merely hypothetical. In construing statutes, we are obliged to consider all laws bearing on the same subject. *Jessen Assoc., Inc. v. Bullock,* 531 S.W.2d 593 (Tex.1976).

My interpretation of the Election Code and our Constitution is not only consistent with *Rains,* but it also resolves "the other side of the coin" presented here. My approach not only resolves the present contro-

versy and gives relevant statutes effect in harmony with the Constitution, but it adds certainty to the law. Additionally, it carries out what I believe is the Legislature's purpose of parity between the Governor and the officeholder *vis a vis* the Constitution. The Court's holding, on the other hand, may resolve this case, but leaves room for future guess work and political maneuvering. This, I believe, is unfortunate.

### V. Conclusion

For these reasons, I would grant the writ of quo warranto and declare Karen Angelini to be the lawful occupant of Justice Hardberger's former office, effective July 14, 1996, the date she took the oath of office.

I respectfully dissent.