**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-50714.

LEAGUE OF UNITED LATIN AMERICAN CITIZENS (LULAC) OF TEXAS, Plaintiff-Appellant,

v.

STATE OF TEXAS, Defendant-Appellee.

May 27, 1997.

Appeal from the United States District Court for the Western District of Texas.

Before DAVIS, STEWART and PARKER, Circuit Judges.

PER CURIAM:

The sole issue on appeal is whether the single-judge district court erred in determining that LULAC's claim under § 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1994), is "wholly insubstantial" and, thus, undeserving of the attention of a three-judge court. Because we conclude that neither the legal nor the factual aspects of LULAC's claim is wholly insubstantial, we reverse and remand for the convening of a three-judge court.

I.

On June 20, 1996, Associate Justice Phil Hardberger of the Fourth District Court of Appeals for the State of Texas tendered his resignation, effective January 1, 1997, to Texas Governor George W. Bush. The practice in Texas had been that if an elected state official other than a judge submitted a written resignation during an election year, then, under § 201.023 of the Texas

1

Election Code,[1] the submission triggered an election to fill that office, even though the official intended to occupy the position until after the election. The parties dispute whether such a practice ever existed for state judicial positions.

Governor Bush, however, determined that his acceptance of Justice Hardberger's resignation created an immediate vacancy on the Fourth District Court of Appeals to which he appointed Karen Angelini to serve on an interim basis until the November elections. Justice Hardberger refused to step down, and the State of Texas sought an emergency writ of quo warranto in the Texas Supreme Court barring Justice Hardberger from interfering with Angelini's appointment.

On August 30, 1996, the Texas Supreme Court handed down its decision in *State ex rel. Angelini v. Hardberger,* 932 S.W.2d 489 (Tex.1996). The court held, first, that because the Texas Constitution prescribes the term judges hold office, no vacancy could occur for election or constitutional purposes until Justice Hardberger vacated his office on January 1, 1997. Second, the court held that any interpretation of § 201.023 that permits an incumbent judge to trigger an election to fill his vacancy by tendering his resignation prior to a general election while holding office until after the election unlawfully abridges the governor's

_____

[1]Tex. Elec.Code § 201.023 (West 1986 & Supp.1997) provides:

> If an officer submits a resignation, whether to be effective immediately or at a future date, a vacancy occurs on the date the resignation is accepted by the appropriate authority or on the eighth day after its receipt by the authority, whichever is earlier.

2

appointment power under Article V, § 28 of the Texas Constitution.[2] *Hardberger,* 932 S.W.2d at 495. As a result, although both the Democratic and Republican parties had nominated candidates to run for Hardberger's position on November 5, 1996, no election was held, and Angelini was appointed to the position shortly after Hardberger's departure. The next succeeding general election is in November 1998.

LULAC filed this action to require the "new rules" in Texas's election laws announced in *Hardberger* to be precleared pursuant to § 5 of the Voting Rights Act, 42 U.S.C. § 1973c, before they are implemented. The district court, without convening a three-judge court, ruled on the state's motion to dismiss, concluded that no election change had occurred since the constitutional provision interpreted by the Texas Supreme Court pre-dated the applicability of § 5 to Texas, and dismissed appellants claims pursuant to Fed.R.Civ.P. 12(b)(6). This appeal ensued.

## II.

Generally, actions by private individuals seeking declaratory and injunctive relief against violations of § 5 must be referred to a three-judge court for the determination of whether the political subdivision has adopted a change covered by § 5 without first obtaining preclearance. *Allen v. State Board of Elections,* 393

---

[2]Article V, § 28 provides in relevant part:

> Vacancies in the office of judges of the Supreme Court, the Court of Criminal Appeals, the Court of Civil Appeals and the District Courts shall be filled by the Governor until the next succeeding general election.

U.S. 544, 554-63, 89 S.Ct. 817, 825-31, 22 L.Ed.2d 1 (1969); *Trinidad v. Koebig,* 638 F.2d 846 (5th Cir.1981); *Sumter County Democratic Executive Comm. v. Dearman,* 514 F.2d 1168, 1170 (5th Cir.1975). However, where § 5 claims are "wholly insubstantial" and completely without merit, such as where the claims are frivolous, essentially fictitious, or determined by prior case law, a single judge may dismiss the claims without convening a three-judge court. *See, e.g., United States v. Saint Landry Parish Sch. Bd.,* 601 F.2d 859, 863 (5th Cir.1979); *Broussard v. Perez,* 572 F.2d 1113, 1118 (5th Cir.), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 610, 58 L.Ed.2d 677 (1978); *Carr v. Edwards,* 1994 WL 419856 (E.D.La. Aug. 8, 1994).

Texas advances two arguments for why LULAC's claim was properly dismissed as wholly insubstantial. First, it argues that state court interpretations of previously precleared state law are not subject to § 5 preclearance. Second, it argues that the Texas Supreme Court's ruling in *Hardberger* does not effect a change in Texas' practice or procedure for filling a vacancy left by a judge who resigns prior to the expiration of his elected term.

A.

The district court rejected Texas's contention that state court interpretations of precleared state law are not subject to § 5 preclearance, concluding that the Supreme Court's decision in *Hathorn v. Lovorn,* 457 U.S. 255, 102 S.Ct. 2421, 72 L.Ed.2d 824 (1982), overruled a well-developed line of cases holding that state court constructions of precleared state law generally do not invoke

4

§ 5's preclearance requirement. *See, e.g., Gangemi v. Sclafani,* 506 F.2d 570, 572 (2nd Cir.1974); *Williams v. Sclafani,* 444 F.Supp. 895, 904 (S.D.N.Y.1977); *Webber v. White,* 422 F.Supp. 416, 427 (N.D.Tex.1976); *Eccles v. Gargiulo,* 497 F.Supp. 419, 422 (E.D.N.Y.1980). While arguably the Supreme Court's holding in *Hathorn* need not be read so broadly, one three-judge district court appears to have reached the same conclusion as the district court, *see Gresham v. Harris,* 695 F.Supp. 1179, 1183-84 (N.D.Ga.1988), *aff'd sub nom., Poole v. Gresham,* 495 U.S. 954, 110 S.Ct. 2556, 109 L.Ed.2d 739 (1990). Under the circumstances, we cannot conclude that from a legal standpoint LULAC's claim is "wholly insubstantial." *See Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973) ("[C]laims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial...."); *Armour v. Ohio,* 925 F.2d 987, 989 (6th Cir.1991) ("A claim is unsubstantiated only when it is obviously without merit or clearly determined by previous case law.").

B.

The same conclusion applies to the factual basis for LULAC's claim. The district court concluded that no change had occurred in Texas's election practices because the Texas Supreme Court's decision in *Hardberger,* 932 S.W.2d 489 (Tex.1996), merely confirmed what had always been true about the governor's constitutional appointment powers. However, in determining whether a voting

5

change has occurred, a court must look to the state's actual practices, not to what those practices should have been under a correct application of the state's voting law. *See Perkins v. Matthews,* 400 U.S. 379, 394, 91 S.Ct. 431, 439-40, 27 L.Ed.2d 476 (1971); *City of Lockhart v. United States,* 460 U.S. 125, 132-33, 103 S.Ct. 998, 1002-04, 74 L.Ed.2d 863 (1983).

It is undisputed that an election was held in almost identical circumstances in 1988 after the Texas Supreme Court handed down its decision in *Texas Democratic Executive Comm. v. Rains,* 756 S.W.2d 306 (Tex.1988). In that case, the court held that Tex. Elec.Code § 201.023 prevented the governor from refusing to accept the resignation of a judge in Justice Hardberger's position, thus triggering an election for the position. *Rains* also makes it clear that the resigning judge remained in office until after the election. It is also undisputed that at the time the Texas Supreme Court decided *Hardberger,* the major political parties already had selected candidates for the ballot to fill Justice Hardberger's vacancy and the state was prepared to elect Justice Hardberger's replacement. Under these circumstances, LULAC's claim as to the existence of the practice is not wholly insubstantial.

## III.

Because we conclude that neither the legal nor the factual basis for LULAC's § 5 claim is "wholly insubstantial," we reverse the district court's order dismissing LULAC's claim and remand for the convening of a three-judge court pursuant to 42 U.S.C. § 1973c.

REVERSED and REMANDED.

6