NO. 07-02-0462-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL E



OCTOBER 20, 2003


______________________________



JOSEPH KALKA, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 159TH DISTRICT COURT OF ANGELINA COUNTY;



NO. 22,630; HON. PAUL E. WHITE, PRESIDING


_______________________________



OPINION


_______________________________



Before QUINN and REAVIS, JJ., and BOYD, S.J. (1) 

 Appellant Joseph Kalka appeals his conviction on two counts of aggravated sexual
assault. (2) Through four issues, he contends that 1) the trial court erred in overruling his
objection to evidence of an extraneous bad act, 2) the trial court erred in overruling his
objection to the admission of hearsay evidence, and 3) the evidence was legally and
factually insufficient to support the conviction. We affirm the judgment.

 Issue One - Extraneous Offense

 In his first issue, appellant asserts that the trial court erred in overruling his objection
to testimony by Cathlena (the victim) that appellant had previously propositioned her to
have sex with him. We overrule the issue.

 The allegedly improper testimony came into evidence during the following exchange:

 Prosecutor: . . . [D]id you know the Defendant, Mr. Kalka, before that date?


 Witness: Yes. He stopped me on the road a couple times.


 Prosecutor: What did he ask you when he stopped you on the road?


 Witness: "Come have sex with me."


 Prosecutor: And did you ever go with him?


 Witness: No. 


 Prosecutor: How many times do you think he stopped you on the road?


 Witness: Ten - - five times or ten.


 Prosecutor: Five or ten times?


 Witness: Uh-huh.


 Prosecutor: When he would stop you, would you be - - 


 Defendant: Your Honor, I'm going to object at this point. This is - - I'm [sic]
mean, I'm going to object first off on the grounds of relevance
and, second, it violates the 404(b) notice. We did not get any
notice they were going to try to bring in other such acts, and I'll
just sort of leave my objection there. 

As can be seen, appellant's objection was not uttered until the prosecutor asked and the
witness answered several questions involving appellant's prior effort at propositioning the
witness. By then, the jury had heard her state that appellant invited her to have sex with
him and had stopped her on the road a number of times. Under these circumstances, the
purported error was waived. See Jones v. State, 111 S.W.3d 600, 604 (Tex. App.-Dallas 
2003, no pet. h.) (holding that error is waived if the objection is made after the State has
elicited the improper testimony and no legitimate reason is offered for the failure to timely
object); Tell v. State, 908 S.W.2d 535, 543-44 (Tex. App.-Fort Worth 1995, no pet.)
(holding that the objection was waived because it was not asserted immediately after the
purportedly inadmissible testimony was mentioned).

Issue Two - Hearsay


 In his second issue, appellant complains about the reiteration by Officer Bonnie
Grimes of "the nature of what Cathlena reported to" her when Grimes was performing her
investigation. Same was allegedly hearsay. We overrule the issue. 

 The following is the exchange during which the allegedly objectionable matter arose:

 Prosecutor: What was the nature of what Cathlena reported to you?


 Defense: Anything that's going to come out is going to be hearsay.


 Court: Well counsel, approach. I'm not - - until I've heard the
response, I don't know if I can rule on that one.


 (At the Bench, off the record.)


 Court: Ms. Armstrong, I'm going to overrule the objection, but since I
caused this interruption, you may restate the question.


 Prosecutor: What was the nature of the crime Ms. Armstrong reported to
you?


 Witness: That she had been sexually assaulted.

As can be seen, at the time appellant uttered his objection, the witness had yet to answer
the question. Furthermore, it is reasonably conceivable that any answer forthcoming may
or may not have contained hearsay since the question posed inquired into the "nature of
what Cathlena reported." (Emphasis added). For instance, the witness simply could have
said something like "Cathlena described to me what happened"; that would not have been
hearsay. In other words, from the structure of the question asked, the trial court could not
necessarily conclude that the only or probable answer forthcoming would contain
inadmissible evidence, and it said as much when it told counsel that it could not determine
if it was hearsay until it heard the response. Thus, we conclude that the trial court did not
abuse its discretion when it overruled appellant's objection. Nor do we conclude that
appellant preserved his complaint to the answer eventually given by the witness after
further questioning because he did not object at that time. 

 Issues Three and Four - Legal and Factual Sufficiency 

 In his next and final two issues, appellant argues that the evidence is legally and
factually insufficient to support his convictions. We overrule them as well.

 a. Standard of Review

 The applicable standards of review are well-settled and fully discussed in Jackson
v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979), Sims v. State, 99 S.W.3d
600 (Tex. Crim. App. 2003), Zuliani v. State, 97 S.W.3d 589 (Tex. Crim. App. 2003), and
King v. State, 29 S.W.3d 556 (Tex. Crim. App. 2000). We refer the litigants to those
opinions. 

 b. Application of Standard

 The record before us illustrates that on November 6, 2001, Cathlena was walking
home to her parent's house around 6:00 p.m. Though 19 years old, she had the mental
capacity of a six or seven-year-old child. While on her way home, she passed by a trailer. 
Three men were in front of it drinking beer. One of the men, Ira Cartwright, was someone
she had known for most of her life, and he called her over to join them. (3) By that time,
Cathlena already had several glasses of wine given to her by a man whose yard she
helped clean. More alcohol was given to her at the trailer. The group was joined by
appellant who lived next door. 

 At some time, the four men and Cathlena went into the trailer. Ira told her to go into
the back bedroom and remove her clothes. She did so because she was afraid he would
rip them off, as he allegedly had done once before. While in the bedroom, he forced
Cathlena to perform oral sex on him and then raped her vaginally. Before Cathlena had
put her clothes back on, appellant entered the room naked, pushed her back on the bed,
and raped her both vaginally and anally. The girl said she struggled, screamed, and told
appellant to stop. (4) When he finished, she dressed and passed out in the living room. The next morning, Cathlena awoke in blood and feces from rectal incontinence. 
Five days lapsed before she told a friend of the incident. The friend reported it to the
authorities. At that time, Cathlena was taken to a hospital where multiple bruises were
discovered. The bruises were six or seven days old and appeared to be caused by
someone's fingers. Also discovered were a knot on her head and severe lacerations to her
anus. The latter caused her to suffer bleeding, severe pain, fecal incontinence, and
difficulty in walking. Furthermore, these injuries were consistent with non-consensual anal
sex, according to a witness.

 The foregoing constitutes some evidence upon which a rational jury could conclude,
beyond reasonable doubt, that appellant 1) intentionally or knowingly penetrated
Cathlena's anus or female sexual organ without her consent, and 2) caused her to suffer
serious bodily injury while doing so. That is enough to warrant conviction for aggravated
sexual assault. See Tex. Pen. Code Ann. §22.021(a) (Vernon 2003) (stating that one
commits aggravated sexual assault if the person intentionally or knowingly causes the
penetration of the anus or female sexual organ of another person without that person's
consent and causes serious bodily injury in the course of that criminal episode). 

 Appellant would disagree with our conclusion because, in his estimation, Cathlena's
mental condition rendered her testimony "extremely suspicious" and "inherently
untrustworthy." Thus, "no rational trier of fact could [purportedly] base a conviction" on it. 
Yet, he cites no authority to support the proposition that the testimony of those having
mental limitations akin to Cathlena's is unbelievable and, consequently, without weight. 
This may be so because mental retardation does not make the recollections of its victims
"inherently untrustworthy"; rather, it simply affects the weight a juror may assign to their
testimony. Allen v. State, 479 S.W.2d 278, 280 (Tex. Crim. App. 1972) (holding that
mental retardation affects the weight of the evidence not its admissibility). So, the girl's
testimony at bar was not legally incompetent, and the jurors were free to consider it if they
so chose.

 Nor do we hold that Cathlena's mental status and inconsistent statements rendered
the verdict clearly wrong or manifestly unjust. Again, the jury was free to assign to her
testimony whatever weight it cared to. So too was it free to consider the affect her
inconsistencies had on her credibility. More importantly, her testimony and its
inconsistencies was not the only evidence before the jury. The latter was also informed
of the trauma inflicted upon Cathlena's body and its consistency with a non-consensual
attack. Appellant says nothing about this evidence or how it bolsters Cathlena's
recollection of the event. Instead, he focuses on her mental limitation and "lack of mastery
over a simple word of the English language" to argue that a "miscarriage of justice"
occurred. That she may have had the mind of a six year old, that her testimony may have
been inconsistent at times, and that she could not say the word "confused," does not strip
the verdict of either legally or factually sufficient evidentiary support given the entirety of
the evidence and the jury's right to weigh it and assess the credibility of those testifying. 
 Accordingly, the judgment of the trial court is affirmed.


 Brian Quinn

 Justice 

 

Do not publish. 

1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code
Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Appellant was convicted of the penetration of both the anus and the female sexual organ of the
victim without her consent.
3. Cathlena testified that Ira had forced her to have sexual relations with him on one previous occasion
and that she was afraid not to join him when he called her name. Ira testified that Cathlena was the one who
called to him and sought to join the group. 
4. Ira conceded he had sexual relations with Cathlena, but contended they were consensual. Appellant
also relied on a defense of consent. 


p. 563, 69 S.W. 983 (1902, writ ref'd), a trespass to try title suit
that presented the issue whether a county surveyor's resignation was effective, making him
eligible to purchase land from the county. The commissioners court had accepted his
resignation but appointed no successor. The court held the constitution continued the
surveyor in office in spite of his resignation. Id. at 984. 

 The Texas Supreme Court cited Article XVI, Section 17 in holding an attempted
resignation did not terminate a mayor's term of office in Jones v. City of Jefferson, 66 Tex.
576, 1 S.W. 903 (1886). The evidence indicated that the mayor there sought to resign for
the purpose of preventing service of process on the city for collection of a debt, not
because of any disqualification to hold the office. Id. at 904. 

 The same reasoning appears in an Attorney General's opinion cited by the State,
Op. Tex. Atty. Gen. No. DM-493 (1998), opining that certain water district directors who
become disqualified for office under Water Code section 49.072 and wish to cease acting
as director before their successors qualify nonetheless hold over in office under Article XVI,
Section 17.

 Other authority suggests that an officeholder's resignation may be effective to vacate
the office, at least for some purposes. The most recent case in which our supreme court
has considered a resignation by an otherwise qualified public official is Angelini, 932
S.W.2d 489. In that case, a justice of a court of appeals sent a letter in June 1996 to the
governor advising of his intent to resign effective January 1, 1997, when he expected to
assume the office of chief justice of the same court. Relying on provisions of the Election
Code, the governor's office treated the resignation as effective eight days after receipt, (5)
creating a vacancy, and the governor appointed a replacement. Id. at 490. The State
brought a quo warranto proceeding to oust the justice from office. The supreme court
found the governor's power of appointment was not invoked by the justice's letter, and
found no basis for his removal. Id. at 492. The court wrote "[i]f his service is ended by
voluntary resignation, he controls the right to decide when he leaves." Id. at 492. It
addressed Article XVI, Section 17 by noting "the Constitution permits his service to be
extended, see Tex. Const. art. XVI, § 17, but not truncated." Id. This statement provides
support for the proposition that the resignation of a qualified public official can be effective
to terminate his service.

 The most factually similar quo warranto case we have reviewed is Phagan v. State,
510 S.W.2d 655 (Tex.Civ.App.-Fort Worth 1974, writ ref'd n.r.e.). In that case, Phagan,
a district attorney, was disbarred in May 1973, rendering him disqualified to hold that office.
Id. at 657. He appealed the disbarment action. During the pendency of that appeal, in
September 1973, the State brought a quo warranto proceeding to oust him from office. The
trial court rendered summary judgment for the State in the quo warranto action in
November 1973 and Phagan appealed that judgment also. 

 During the pendency of the appeal, Phagan submitted his resignation in March 1974. 
Id. at 658. Among the arguments advanced on appeal by Phagan was the assertion that
his resignation rendered the case moot. With regard to the effect of the resignation the
court wrote: "This resignation did render moot some of the questions involved in the quo
warranto proceedings, but not all of them. The question of whether Phagan is or is not
entitled to the emoluments of the office during the period between the date of the rendition
of the decree appealed from and the date of his resignation from the office would hinge on
the outcome of this appeal." Id. at 658. We may infer from this comment that the court
viewed the resignation as effective. The case, though, does not involve the effect of Article
XVI, Section 17. See also Leonard v. Speer, 48 S.W.2d 474 (Tex.Civ.App.--Galveston
1932), writ dism'd, 56 S.W.2d 640 (1933) (resignation of sheriff after felony conviction
created vacancy in office; Article XVI, Section 17 not discussed); Op. Tex. Atty. Gen. No.
M-659 (1970) (resignation of county attorney effective, but he continued to hold over under
Article XVI, Section 17).

 The facts recited in Attorney General's opinion JC-0514 are reflective of another
class of quo warranto cases similar to but distinct from the facts present before us, those
involving officers who are disqualified but continue to claim their office. (6) Op. Tex. Atty.
Gen. No. JC-0514 (2002). 

 Appellant generally acknowledges applicability of the holdover provisions of Article
XVI, Section 17 of the Texas Constitution, but nonetheless contends that no live or
justiciable controversy triable by quo warranto can exist following his resignation because
the sole function of the quo warranto action is to test his claim to the office, a claim he
abandoned by resigning. Appellant cites Griffith v. State ex rel. Ainsworth, 226 S.W. 423
(Tex.Civ.App.-El Paso 1920, no writ), for the proposition that a quo warranto action is moot
and must be dismissed when the official "no longer holds office or claims a continued right
to hold the office." We view Griffith more narrowly, finding that it held a quo warranto
proceeding must be dismissed on expiration of a term of office. Id. It contained no
discussion of the effect of resignation by an officer whose term had not expired, nor does
it discuss the effect of Article XVI, Section 17. Griffith is not dispositive.

 There are distinctions in the facts of this case and those involved in each of the
cases and opinions discussed. The officials involved in the cited cases resigned for a
variety of reasons, some personal, some related to their offices. Too, as noted, most of
those cases involved officeholders who continued to be qualified to hold their offices at the
time of their resignation, while appellant's resignation occurred after he became disqualified
for, and statutorily forfeited, the office of constable. It is difficult to draw from the authorities
we have reviewed a clear-cut rule to be applied here. Significantly, however, none of the
authorities we have surveyed in which it is suggested that an officeholder's resignation
would be effective despite Article XVI, Section 17 involve situations in which no successor
is likely to be appointed. Appellant blames the Potter County commissioners court for that
circumstance here, arguing that its failure to appoint a successor constable brings the
holdover provision of Article XVI, Section 17 into play. He provides, though, no persuasive
argument explaining how the commissioners' decision not to appoint a constable affects
the application of the constitutional provision, or how the decision operates to deprive the
district court of jurisdiction. We cannot read into the constitution an exception to Article
XVI, Section 17 for instances in which the governmental body having responsibility for
determining whether and when to fill a vacancy in office determines not to do so. 
Moreover, to hold that Article XVI, Section 17 has no application here would be to sanction
the very circumstance that provision of our constitution was designed to prohibit, a public
officeholder's unilateral decision to vacate his office. We agree with the State that
appellant's December 27, 2001, resignation was not effective to vacate his office. The
parties maintained a legally cognizable interest in the completion of the procedure
established by statute for termination of appellant's public service. 

 Further, the State's pleadings in the quo warranto action asked the trial court to
impose a fine on appellant pursuant to section 66.003(3) of the Civil Practice and Remedies
Code. In the later proceedings, appellant resisted the imposition of that fine, and still
resists its imposition on appeal. The proceeding not having been rendered moot by
appellant's resignation, the dispute over the levy of a fine also maintained the live
controversy. We overrule appellant's first issue. 

Imposition of Fine

 Before addressing appellant's second issue, we consider his fourth issue, which
concerns the trial court's imposition of a fine pursuant to section 66.003(3) of the Civil
Practice and Remedies Code. Consideration of that issue necessitates reviewing the
specific statutory grounds authorizing quo warranto proceedings in the factual and
procedural history of this case.

 As noted, section 66.001 of the Civil Practice and Remedies Code contains two
grounds authorizing quo warranto proceedings relevant here. The first is applicable when
"a person usurps, intrudes into, or unlawfully holds or executes a franchise or an office[.]"
The second is available when "a public officer does an act or allows an act that by law
causes a forfeiture of his office." Tex. Civ. Prac. & Rem. Code Ann. § 66.001 (Vernon
1997). Section 66.003 authorizes the imposition of a fine, but only for usurping, intruding
into, or unlawfully holding and executing the office, not for doing or allowing an act causing
a forfeiture of the office. Tex. Civ. Prac. & Rem. Code Ann. § 66.003(3) (Vernon 1997). 

 The State's petition and information alleged appellant "forfeited the office of
Constable for Precinct 3 of Potter County, Texas, but refuses to vacate that office. 
Accordingly the writ of quo warranto should be issued against [appellant.]" It characterized
section 66.001(1) of the Civil Practice and Remedies Code as providing that quo warranto
is available "if a person unlawfully holds or executes an office created by authority of the
State of Texas," and that appellant "should be fined for usurping and/or unlawfully holding
and executing the office of Constable[.]" The State thus proceeded against appellant on
both a "usurping" claim under section 66.001(1), and a "forfeiture" claim under section
66.001(2). 

 Under the well-settled rules applicable to summary judgment, the summary
judgment movant must demonstrate entitlement to judgment as a matter of law. Tex. R.
Civ. P. 166a. A motion for summary judgment under Rule of Civil Procedure 166a(c) must
state the specific grounds on which the movant contends it is entitled to judgment.
McConnell v. Southside Ind. Sch. Dist., 858 S.W.2d 337, 339-41 (Tex. 1993). Here, the
State's motion for summary judgment was based on appellant's failure to obtain a
permanent peace officer's license and section 86.0021(b) of the Local Government Code.
The State did not contend or point out evidence that appellant otherwise usurped the office.
The references in the motion to appellant's holding the office unlawfully were based on the
statutory forfeiture. (7)

 The evidence of appellant's forfeiture of office by failure to obtain a peace officer's
license, standing alone, does not authorize the imposition of a fine. To hold that a forfeiture
of office also supports a finding the officer has usurped or unlawfully holds the office would
ignore the distinction made by the legislature when it authorized a fine for one but not the
other. See Tex. Civ. Prac. & Rem. Code Ann. § 66.003(3) (Vernon 1997). 

 For purposes of our consideration of this issue we assume, without deciding, that
usurping and unlawful holding of office are independent grounds for removal under section
66.001(1). "Usurpation" implies an intrusion, encroachment, seizure or assumption of office
or authority, typically an office or authority that belongs to another. See Black's Law
Dictionary 1545 (6th Ed. 1990). Here the undisputed facts show first, that appellant took
office lawfully after an unchallenged election, and second, that no other person claimed the
office. Neither the summary judgment motion, or evidence, support a conclusion that
appellant was a "usurper" of the office of constable as that term is recognized in the law. 

 With regard to the State's position that appellant unlawfully held or executed the
office, it fails to offer any basis for reconciling its argument that appellant continued to hold
over in office after September 28, 2001, by virtue of Article XVI, Section 17, with its position
that his occupation of the office after the same date was "unlawful." In this context, those
positions are mutually exclusive. If Article XVI, Section 17 of the state constitution required
appellant to continue to perform the duties of the office of constable regardless of the
forfeiture of his office, see Op. Tex. Atty. Gen. No. JC-0514 (2002), or his resignation, see
Op. Tex. Atty. Gen. No. DM-493 (1998), then his mere continued occupation of the office
or execution of its duties was not "unlawful" for purposes of section 66.003. Appellant was
not accused of actions constituting the unlawful execution of the office. The State's motion
for summary judgment alleged only that he continued to accept compensation after
forfeiting the office and that he failed to perform the duties of constable.

 We hold neither the State's motion for summary judgment or the summary judgment
evidence supports a judgment for the imposition of a fine on the basis that appellant was
a usurper of the office of constable or that he held or executed that office unlawfully. 
Because a court's authority to impose a fine in a quo warranto proceeding is limited to
instances when the official usurps, intrudes into or unlawfully holds and executes an office,
the trial court's imposition of a fine in this case was not authorized and must be reversed. 
See Shields v. State, 936 S.W.2d 711, 712 (Tex.App.--Austin 1996, no writ) (quo warranto
judgments limited to remedies authorized by statute); Tex. Civ. Prac. & Rem. Code Ann.
§ 66.003(3) (Vernon 1997). We sustain appellant's fourth issue to that extent. This
disposition resolves appellant's third issue challenging the imposition of a fine. It also
resolves appellant's fifth issue to the degree he contends the fine was an improper
judgment for damages.

Right to Jury Trial

 Appellant's second issue assigns error to his removal without a trial by jury. He
relies on Article V, Section 24 of the Texas Constitution, which provides, in relevant part:

 [C]onstables, and other county officers, may be removed by the Judges of
the District Courts for incompetency, official misconduct, habitual
drunkenness, or other causes defined by law, upon the cause therefor being
set forth in writing and the finding of its truth by a jury. 


He argues this provision precludes resolution of this proceeding by summary judgment. 
Appellant does not, however, point out any fact issue present in the case that would require
impaneling a jury on the question of his removal from office. In the absence of a
controverted issue of fact, a litigant cannot properly say that the grant of summary
judgment deprived him of his constitutional right to a jury trial. Wyche v. Works, 373 S.W.2d
558, 561 (Tex.Civ.App.-Dallas 1963, writ ref'd n.r.e.); see Ramirez v. Flores, 505 S.W.2d
406, 414 (Tex.Civ.App.-San Antonio 1973, writ ref'd n.r.e.). We overrule appellant's
second issue. 

Declaration of Vacancy

 Appellant's fifth issue assigns error to that part of the trial court's judgment declaring
the office of constable vacant, arguing that declaration exceeded the scope of a permissible
judgment in a quo warranto proceeding. We disagree the recitation in the judgment was
an improper declaratory judgment, finding it merely in explication of the order removing
appellant from office. We overrule appellant's fifth issue.

Conclusion

 Our disposition of appellant's fourth issue requires reversal of that part of the trial
court's judgment imposing a fine. When both parties move for summary judgment and the
trial court grants one motion and denies the other, the appellate court reviews the summary
judgment evidence of both parties, determines all questions presented, and renders the
judgment that the trial court should have rendered. See Bradley v. State ex rel. White, 990
S.W.2d 245, 247 (Tex. 1999). In so doing, though, the appellate court still must adhere to 
the rules that each movant must carry its own burden to establish its right to judgment,
Miller & Freeman Ford, Inc. v. Greater Houston Bank, 544 S.W.2d 925, 926 (Tex. 1976);
Russell v. Panhandle Producing Co., 975 S.W.2d 702, 708 (Tex.App.- Amarillo 1998, no
pet.), and that summary judgment may not be rendered for a party on a ground not
encompassed within its motion in the trial court. McConnell, 858 S.W.2d at 341. Here the
only ground on which appellant moved for summary judgment was mootness. In
addressing appellant's first issue we concluded the matter was not moot. Consequently,
the trial court did not err in denying appellant's motion for summary judgment. Although we
have found that the evidence in the summary judgment record does not support imposition
of a fine, we may not render judgment for appellant on that issue. Therefore, we sever the 


issue concerning imposition of a fine and remand it to the trial court. We affirm the
remainder of the trial court's judgment.


 James T. Campbell

 Justice


1. At oral argument the parties represented this date was December 27, 2001.
2. See Act of July 9 1879, 16th Leg. S.S., Ch 48, § 1, 1879 Tex. Gen. Laws 75.
3. Under more recent statutes, other procedures also may serve that purpose. See,
e.g., Tex. Occ. Code Ann. § 1701.302 (Vernon Pamph. 2004) (removal of elected law
enforcement officers for failure to obtain peace officer license).
4. Article XVI, Section 17 is not absolute. It does not obligate an officeholder who is
removed from office to continue to perform the duties of office, even though a successor
is not appointed. See Manning v. Harlan, 122 S.W.2d 704, 707 (Tex.Civ.App.-El Paso
1939, writ dism'd). 
5. See Tex. Elec. Code Ann. § 201.023 (Vernon 2003).
6. Cases of this type include Scolaro v. State ex rel. Jones, 1 S.W.3d 749
(Tex.App.-Amarillo 1999, no pet.) (county court at law judge continued to claim office
against assertions of disqualification); Welch v. State ex rel. Long, 880 S.W.2d 79
(Tex.App.-Tyler 1994, writ denied) (constable claiming office removed for prior felony
conviction); Diaz v. State, 68 S.W.3d 680 (Tex.App.-El Paso 2000, pet. denied); Ramirez
v. State, 973 S.W.2d 388 (Tex.App.--El Paso 1998, no pet.) (removal of city officials), and
Robinson v. State, 28 S.W. 566 (Tex.Civ.App. 1894, no writ) (quo warranto proper to
resolve claim to office of sheriff who failed to give bond).
7. For example, the State's motion alleged: "defendant's acts and omissions
conclusively demonstrate that [he] has, by law, forfeited but continued to unlawfully hold
the office of constable[.]"