**Jonathan MOSELEY, Plaintiff,**

v.

**Dianna PRICE, et al., Defendants.**

**No. CIV.A. 03–1320–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Jan. 22, 2004.

Alexander Francuzenko, O'Connell & O'Connell, Rockville, MD, John Adrian Gibney, Jr., Thompson & McMullan, Richmond, Robert T. Mitchell, Jr., Hall, Monahan, Engle, Mahan & Mitchell, Winchester, James Christian Stuchell, Office of the Attorney General, Richmond, for Defendants/Respondents.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue at the threshold in this case alleging violations of the Voting Rights Act[1] and various federal constitutional rights, as well as several state law claims, is whether the complaint states valid causes of action assuming, as required, the truth of its factual allegations. For the reasons that follow, it is pellucidly clear that the complaint's federal claims are meritless and must be dismissed, while the plaintiff's state law claims should be dismissed without prejudice so plaintiff may pursue them in state court.

### I.[2]

On March 7, 2003, plaintiff submitted preliminary forms to run as a Republican candidate for the office of Commonwealth's Attorney in Loudoun County. He contemporaneously submitted a computer-generated Voter Registration Application to vote in Loudoun County using the address 42525 Braddock Road, South Riding, Virginia. According to the complaint, the day prior to submitting this application, he had verbally contracted with his friend Doug Johnston to live in a separate basement apartment at Johnston's Loudoun County residence located at 42525 Braddock Road. And, on that same day, plaintiff began gradually moving into this Loudoun County apartment and living there. He left the Arlington apartment he was renting, allowing a friend and her parents, recent immigrants, to live there.

Plaintiff's voter registration application was processed by Loudoun County officials and, as a result, plaintiff became registered to vote in Loudoun County sometime between March 14 and March 17, 2003 and a voter registration card was mailed to him at the Braddock Road address on or about that date. The postal service, however, failed to deliver plaintiff's voter registration card because it had instructions not to deliver mail to that address that was not in the name of Doug Johnston.[3] The registration card was therefore "returned to sender" and received by the Office of the General Registrar for Loudoun County on March 17, 2003. On March 18, 2003, Pat Thibodeau, an assistant registrar spoke

---

**1.** 42 U.S.C. § 1973 *et seq.*

**2.** The facts recited here are derived from plaintiff's complaint, the attached or referenced exhibits, documents, or orders. *See Davis v. Hudgins,* 896 F.Supp. 561, 566 (E.D.Va.1995), *aff'd,* 87 F.3d 1308 (4th Cir. 1996) (on motion to dismiss for failure to state a claim upon which relief can be granted, courts "can rely only upon allegations in the complaint and those documents attached as exhibits or incorporated by reference"); *see also Anheuser–Busch v. Schmoke,* 63 F.3d 1305, 1312 (4th Cir.1995), *vac. on other grounds,* 517 U.S. 1206, 116 S.Ct. 1821, 134 L.Ed.2d 927 (1996) (on motion to dismiss, courts should consider only the allegations contained in the complaint, the exhibits to the complaint, matters of public record, and other similar materials that are subject to judicial notice); Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1357 (same).

**3.** Plaintiff alleges that Johnston does not recall ever having given any such instructions.

with plaintiff over the phone and informed him of his returned voter registration card. Plaintiff instructed Thibodeau to resend the card to the Braddock Road address. Thibodeau then resent plaintiff's voter registration card to the Braddock Road address on March 18, 2003. As defendant Dianna Price, Secretary of the Loudoun County Electoral Board, notes in a letter attached to plaintiff's complaint, this is a routine procedure. Indeed, "enclosure E" of Price's letter, also attached to plaintiff's complaint, states the following as the standard procedure to be followed when a voter registration card is returned by the Post Office:

> Attempt to contact the voter to verify the address. Resend the voter card, if address verified as correct. Place the yellow sticker placed on the envelope by the Post Office on the back of the voter application with any information obtained when verifying the address. If the voter card comes back again, contact the voter again and suggest they contact the Post Office. If you cannot reach the voter to verify the address, place the voter on inactive status. Place the yellow sticker, placed on the envelope by the Post Office, on the back of the voter's application.

From this written procedure, plaintiff infers and alleges in the complaint that the policy and practice in these circumstances is to resend the voter registration card "with no adverse consequences." Significantly, the procedure attached to plaintiff's complaint does not address in any way whether further inquiries or investigations may be undertaken after a voter registration card is resent.

Next, plaintiff alleges that defendant Tim Jon, a journalist with WAGE Radio, brought certain unspecified "evidence" to the attention of Secretary Price and urged initiation of an official county investigation into the veracity of plaintiff's voter registration application. The letter attached to plaintiff's complaint from Secretary Price to Owen Basham, the Deputy Commonwealth's Attorney, states that, acting on a "tip" from Tim Jon at WAGE Radio, Price and Registrar Judy Brown logged onto the "web logis" system to view the real estate records for the Braddock Road address used by plaintiff and that these records reflected that the property was listed as "Ticonderoga Farms," the home of Peter Knop. The county land records Secretary Price accessed showed Knop as trustee of this property. Secretary Price then contacted the State Board of Elections with respect to this matter. Defendant Jean Jensen, Secretary of the State Board of Elections, urged Secretary Price to submit this information to the Loudoun County Commonwealth Attorney's office for further review. Acting on this suggestion, Price spoke with Deputy Commonwealth's Attorney Basham, on March 19, 2003 regarding this matter and sent him a follow-up letter that same day outlining the information known to Secretary Price at the time, with relevant enclosures.[4] Yet, plaintiff alleges that Secretary Price had actual knowledge that Knop did not live at the Braddock Road address because Secretary Price had visited Knop in the past at his actual home on the "Main Farm" of Ticonderoga Farms and that in sending information to Basham suggesting that plaintiff's application was fraudulent, Secretary Price was motivated by a desire to injure the Republican party and "to smear any Republican candidate possible."

At some point thereafter an investigation into plaintiff's voter registration application was initiated. On March 21, 2003, Chief Judge Thomas Horne of the Circuit Court for Loudoun County appointed defendant Andrew Parker, an Assistant

---

4. This is the aforementioned letter that was   attached to the complaint.

Commonwealth's Attorney for Arlington County, as Special Prosecutor in the matter. On April 9, 2003, Chief Judge Horne entertained a motion by plaintiff to vacate his previous order "appointing a special prosecutor to appropriately respond to an inquiry from the Loudoun County Electoral Board." By order dated May 20, 2003, Chief Judge Horne confirmed his earlier appointment and denied plaintiff's motion to quash or vacate the earlier reference.[5] James Lynch, an investigator with the State Police, began investigating the matter. Plaintiff ultimately withdrew from the race for Commonwealth Attorney because of this investigation and the controversy it generated. In October, Parker sought a grand jury indictment against plaintiff. The grand jury, it appears, did not indict plaintiff, and Parker was thereafter discharged from his duty as Special Prosecutor in this matter.[6]

Plaintiff alleges that as a "direct and proximate cause of these wrongs," he lost the opportunity to win election to the office of Commonwealth's Attorney, depriving him of that office's $110,000 salary for four years, or $440,000. Plaintiff contends he was certain to win the election because he was the Republican nominee in a heavily Republican County running against an unpopular incumbent. Plaintiff also alleges that he lost his $55,000/year job with benefits as a direct and proximate result of defendants' actions and was fortunate to be retained on an independent contractor basis for $48,000/year, with no benefits. Plaintiff also alleges he has suffered immense financial and intangible harm to his reputation and professional prospects.

The eight count complaint includes five federal claims and three state law claims. Count I alleges a violation of Section 5 of the Voting Rights Act and seeks declaratory and injunctive relief against defendants Price, Jensen, the Commonwealth of Virginia, Governor Mark Warner, Parker, and Bob Anderson. Plaintiff alleges that these defendants' actions in investigating his voter registration application constitute a change in voting procedures requiring Section 5 preclearance under the Voting Rights Act, which preclearance was never sought or received.

Count II also alleges a violation of Section 5 of the Voting Rights Act against the same defendants, but this count is pursued under 42 U.S.C. § 1983 and seeks monetary damages.

Count III alleges a violation of the Equal Protection Clause of the Fourteenth Amendment pursuant to 42 U.S.C. § 1983, for which plaintiff seeks injunctive and monetary relief against defendants Price, Jensen, the Commonwealth of Virginia, Governor Warner, Parker, and Anderson. In this count, plaintiff claims that these defendants violated his rights under the Equal Protection Clause by conditioning his right to vote and to register to vote without consequences or punishment on whether he owned the house at Braddock Road, the address he used on his voter registration application.

Count IV alleges a § 1983 due process claim for injunctive and monetary relief against the same defendants. Here, plaintiff alleges that "his due process rights have been violated by Defendants investi-

---

**5.** These orders from Loudoun County Circuit Court are attached to Defendants Andrew Parker and Robert Anderson's Supplemental Memorandum in Support of Their Rule 12(b)(6) Motion to Dismiss Plaintiff's Federal Claims.

**6.** An order from Chief Judge Horne of the Loudoun County Circuit Court discharging Parker from his duty as Special Prosecutor dated October 22, 2003 is attached to Parker's memorandum in support of his motion to dismiss. *See* Rule 201, Fed.R.Evid. (judicial notice).

gating, harassing, and seeking to prosecute Plaintiff based upon unconstitutional conditions and unconstitutional requirements and Defendants' own violation of Federal and State laws and of Plaintiff's constitutional rights."

Count V alleges a violation of the constitutional right to travel against defendants Price, Jensen, the Commonwealth of Virginia, Governor Warner, Parker, and Anderson and seeks injunctive and monetary relief. In this respect, plaintiff alleges that defendants conditioned his right to register to vote by infringing on his right to choose where he lives, limiting his right to move to a new residence without restrictions, and punishing plaintiff for taking up a new residence.

The last three counts allege state law claims. Count VI alleges a violation of Va.Code § 18.2–500 against defendants Anderson, Price, Jensen, and Tim Jon for injury to reputation, trade, business, or profession. Count VII alleges libel against defendants Anderson, Price, Jensen, and Jon for their allegedly false and defamatory statements. Finally, Count VIII seeks equitable relief "to enjoin, remedy, and compensate for Defendants' actions at Plaintiff's expense and to his injury."

## II.

### A. Voting Rights Act Claims (Counts I & II)

█ Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, requires a "covered jurisdiction" under § 4a of the Act[7] to refrain from implementing any new "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964" unless it first obtains preclearance for the change from the United States Attorney General or the United

States District Court for the District of Columbia. 42 U.S.C. § 1973c. Virginia is a covered jurisdiction. See Appendix to 28 C.F.R. Part 51. Private litigants may commence an action under Section 5 of the Voting Rights Act in a local district court for a declaratory judgment that a new voting qualification or prerequisite, or voting standard, practice or procedure was not pre-cleared. See Allen v. State Bd. of Elections, 393 U.S. 544, 557–60, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). Any action under Section 5, however, must "be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28." 42 U.S.C. § 1973c; see also Allen, 393 U.S. at 560–63, 89 S.Ct. 817. And, plaintiff, in his complaint, requested a three-judge panel pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2284. More specifically, however, § 2284(b)(1) of Title 28 provides that the district judge to whom a request for a three-judge court is made "shall, unless he determines that three judges are not required," notify the chief judge of the circuit to convene a three-judge court. 28 U.S.C. § 2284(b). Appeals from decisions of three-judge courts under Section 5 must be made directly to the Supreme Court. See 42 U.S.C. § 1973c; Allen, 393 U.S. at 561–62, 89 S.Ct. 817.

█ It is clear, therefore, that single district judges may not generally determine the merits of claims alleging the failure to pre-clear voting changes under Section 5. See Backus v. Spears, 677 F.2d 397, 400 (4th Cir.1982). Yet, § 2284 does provide that a single judge may "determine[ ] that three judges are not required." 28 U.S.C § 2284(b)(1). Specifically, a single district judge may do so only if a plaintiff's challenge is "wholly insubstantial." League of Am. Citizens v. Texas, 113 F.3d 53, 55 (5th Cir.1997) (quoting Goosby v.

7. 42 U.S.C. § 1973b.

*Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973)); *see also LaRouche v. Fowler,* 152 F.3d 974, 982 (D.C.Cir.1998); *Backus,* 677 F.2d at 400. The Supreme Court's decision in *Goosby v. Osser,* 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973), involved a challenge to state election laws under the Equal Protection and Due Process Clauses of the Fourteenth Amendment, which at the time had to be made before a three-judge district court pursuant to 28 U.S.C. § 2281. Congress repealed 28 U.S.C. § 2281 in 1976, returning jurisdiction over suits to enjoin state statutes on constitutional grounds to single district judges. *See* Act of August 12, 1976, Pub.L. No. 94–381, 90 Stat. 1119. Yet, it is clear that since then "courts uniformly have applied *Goosby*'s 'wholly insubstantial' standard to requests for three-judge courts under section 5 of the Voting Rights Act." *LaRouche,* 152 F.3d at 982 n. 6 (listing cases).

■ Measured against this standard, plaintiff's Voting Rights Act claim fails; it is "obviously without merit" in that, when the complaint is read in its entirety with the attached exhibits, it does not in fact allege that any defendants implemented a new, uncleared "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting ...."

The starting point in the analysis is the complaint's allegation that the existing practice or procedure in effect in the event a mailed registration card is returned is to "[r]esend the voter card, if address verified as correct."[8] As the complaint reflects, precisely this occurred: Pat Thibodeau contacted plaintiff by telephone after his voter registration card was returned by the post office. She verified plaintiff's address and resent the card the following day to the Braddock Road address; and plaintiff then received his voter registration card and indeed, thereafter voted, as plaintiff has acknowledged.

■ It is plaintiff's claim, however, that the existing voting rule or practice was to resend the voter card *"with no adverse consequences"* and that the County's initiation of an investigation constituted the implementation of a change that had not been pre-cleared. More particularly, plaintiff's claim is that the existing rule requiring resending the card, although silent on inquiries or investigations, warrants the inference that the rule is to resend the card "with no adverse consequences," *i.e.,* with no inquiries or investigations and, importantly, that because he alleges this inferential emendation to the rule, it must be accepted for the Rule 12(b)(6) analysis. The fatal flaw in this contention is that the inference plaintiff alleges is wholly unwarranted and it is settled that courts need not accept "unwarranted inferences" or "unwarranted deductions" made by a plaintiff in his complaint when deciding a motion to dismiss. *See Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership,* 213 F.3d 175 (4th Cir.2000) (courts "need not accept the legal conclusions drawn from the facts and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments").[9]

Plaintiff's alleged inference is wholly unwarranted because nothing in the written

---

8. Exhibits attached to plaintiff's complaint may be taken into account for purposes of a motion to dismiss. *See supra* note 2.

9. *See also Olpin v. Ideal Nat. Ins. Co.,* 419 F.2d 1250 (10th Cir.1969) ("The court must accept as true the factual allegations in the complaint and any inference reasonably deducted therefrom, but it need not accept mere legal conclusions or factual claims at variance with the express terms of an instrument attached to the complaint as an exhibit."); Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1357.

procedure invites or justifies such an inference. To the contrary, common sense and state law invite a different inference, namely that while a returned card must be resent if the address is verified as correct, any allegation of fraud may be investigated.[10] Therefore, there was no new procedure for which preclearance was required. As a result, Counts I and II must be dismissed in their entirety against all defendants.[11] Referral of these counts to a three-judge court is not required, as these Voting Rights Act claims are wholly insubstantial and obviously without merit.[12]

## B. Equal Protection & Due Process Claims (Counts III & IV)

In Count III, plaintiff alleges that his rights under the Equal Protection Clause of the Fourteenth Amendment have been violated because defendants Price, Jensen, the Commonwealth of Virginia, Governor Warner, Parker, and Anderson conditioned his "right to freely vote and register to vote without consequences or punishment" on whether he was the owner of the property located at the Braddock Road address he used on his voter registration application. While the right to vote is surely a fundamental right protected under the Equal Protection Clause,[13] nothing in the complaint's allegations amounts to a claim that plaintiff's right to vote, or his right to register to vote, has been abridged or restricted in any way in this case.[14] The factual allegations in plaintiff's complaint, assuming they are true, do not demonstrate that any defendants conditioned plaintiff's right to vote or his right to register to vote on owning property. *Cf. Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (declaring unconstitutional state law that restricted voting in school district elections to those who owned taxable real property in the district or who had custody of children enrolled in local public schools); *Cipriano v. City of*

---

**10.** *See* Va.Code § 24.2–1019 ("Any complaint or allegation concerning unlawful conduct under this title shall be filed with the attorney for the Commonwealth of the county or city in which the alleged violation occurred. In the case of a complaint or allegation concerning the filing of a false statement in a voter registration application, the violation shall be deemed to have occurred in the county or city where the applicant sought to be registered.").

**11.** In addition, Count II must be dismissed against all defendants because the implied right of action that the Supreme Court held is vested in private parties under Section 5 does not provide a right to recover monetary damages. *See Allen*, 393 U.S. at 554–55, 89 S.Ct. 817. Moreover, it is well-settled that § 1983 cannot serve as a means to enforce a statute that has its own comprehensive internal enforcement scheme, as the Voting Rights Act clearly has. *See Middlesex County Sewerage Authority v. Nat'l Sea Clammers Assoc.*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981); *see also, e.g.,* 42 U.S.C. §§ 1973j, 1973l.

**12.** To be clear, this analysis assumes (i) that plaintiff did indeed live at the Braddock Road address, (ii) that he did not commit voter registration fraud and (iii) that the procedure referred to is in fact a procedure that a covered jurisdiction is prohibited from altering without prior federal approval under Section 5 of the Voting Rights Act.

**13.** *See Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 626, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 666, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966); *Reynolds v. Sims*, 377 U.S. 533, 555, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964).

**14.** Nor does plaintiff allege that his vote was diluted in any way. *See Reynolds*, 377 U.S. at 555, 84 S.Ct. 1362 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise.").

*Houma,* 395 U.S. 701, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969) (declaring unconstitutional statute providing that only property owners could vote on whether a municipal utility could issue municipal bonds).[15] Again, as the complaint reflects, plaintiff was allowed to register to vote and received his voter registration card without any atypical delay.[16] The fact that an investigation was initiated in part because plaintiff was not listed as the owner of the Braddock Road property clearly does not mean his right to vote or to register to vote was conditioned on his owning property in violation of the Equal Protection Clause. Count III must therefore be dismissed in its entirety.

Plaintiff's due process allegation in Count IV also fails. Under this claim, plaintiff alleges that his due process rights were violated (i) by the actions of defendants in investigating, harassing, and seeking to prosecute plaintiff based on unconstitutional conditions and unconstitutional requirements and (ii) by defendants' violation of federal and state laws and of plaintiff's constitutional rights.[17] As noted, the factual allegations in plaintiff's complaint do not amount to a condition that plaintiff own property in order to vote or to register to vote. To the contrary, plaintiff, without regard to whether he owned any property, was allowed to register to vote and promptly received his registration card. There is no allegation that his card was not resent pending the investigation or that its re-mailing was delayed in any way. Indeed, plaintiff's card was resent on March 18, 2003. No unconstitutional condition or requirement of property ownership was placed upon either plaintiff's right to vote or his right to register to vote. Nor does it amount to a constitutional violation that plaintiff was investigated by the County (i) because unspecified allegations were made by Tim Jon to Secretary Price regarding the veracity of plaintiff's claim that he resided in Loudoun County and (ii) because he was not listed as the owner of the Braddock Road address. The desire not to be investigated for voter registration fraud is not a fundamental right protected by the due process clause. *Cf. Doe v. Heck,* 327 F.3d 492, 520 (7th Cir.2003) (liberty interest in familial privacy and integrity "does not include the right to be free from child abuse investigations"). Ensuring that registered voters

---

**15.** *But see Salyer Land Co. v. Tulare Lake Basin Water Storage Dist.,* 410 U.S. 719, 93 S.Ct. 1224, 35 L.Ed.2d 659 (1973) (upholding state laws limiting voting in water storage district elections to property owners and apportioning votes according to assessed valuation of land within districts).

**16.** In his pleadings, plaintiff makes much of the fact that a covered jurisdiction need not be successful in denying an individual his right to vote in order to have committed a violation of Section 5 of the Voting Rights Act. *See Allen,* 393 U.S. at 555 n. 19, 89 S.Ct. 817 (noting that in a private action under Section 5 of the Voting Rights Act, the only relevant question is "whether the new voting practice must be submitted for approval" before enforcement). While this is so for Voting Rights Act claims, it does not hold true for plaintiff's other constitutional claims. Clear-

ly, defendants must have denied or restricted plaintiff's fundamental right to vote in order for plaintiff to state an equal protection claim in these circumstances. *See Hayward v. Clay,* 573 F.2d 187, 190 (4th Cir.1978) ("[O]nce the right to vote is established, the equal protection clause requires that, in matters of general interest to the community, *restriction* of the franchise on grounds other than age, citizenship, and residence can be tolerated only upon proof that it furthers a compelling state interest.") (emphasis added).

**17.** In his supplemental pleading, plaintiff appears to argue that even the legal conclusions alleged in his complaint must be taken as true for purposes of a motion to dismiss. Clearly, this is not the case. *See generally* Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 1357.

are indeed qualified to vote is surely a legitimate state interest and government officials must have the ability to investigate allegations of voter registration fraud. *See* Va.Code § 24.2–1019, quoted *supra* note 10. A different result might obtain were a plaintiff to allege that his voter registration was suspended pending a registration fraud investigation based solely on the fact that the plaintiff was not listed as the owner of an address used for registration purposes. This is neither alleged, nor did it occur.

In supplemental pleadings filed by plaintiff in this matter, it appears he makes a more specific claim that Secretary Price violated his due process rights by referring the matter of his possible voter registration fraud to the Commonwealth's Attorney without filing a formal complaint pursuant to Va.Code § 24.2–1019 and by failing to conduct a thorough investigation on her own before referring the matter to the Commonwealth's Attorney, as required by Va.Code §§ 24.2–651 and 24.2–651.1. These allegations misapprehend these statutes and do not save Count IV.

Section 24.2–1019 of the Virginia Code deals with complaints and allegations concerning election law offenses and states that

Any complaint *or allegation* concerning unlawful conduct under this title shall be filed with the attorney for the Commonwealth of the county or city in which the alleged violation occurred. In the case of a complaint or allegation concerning the filing of a false statement in a voter registration application, the violation shall be deemed to have occurred in the county or city where the applicant sought to be registered.

Va.Code § 24.2–1019 (emphasis added). Contrary to plaintiff's argument, this Code section supports the legality of the very actions alleged to have been taken by Secretary Price in the complaint in violation of the Voting Rights Act. While it is unclear whether Price filed a formal complaint with the Commonwealth's Attorney, she certainly brought an *allegation* of election fraud to the attention of the Commonwealth's Attorney by sending a letter to that office.

Moreover, with respect to Va.Code §§ 24.2–651 and 24.2–651.1, despite plaintiff's allegations to the contrary, these sections do not require that defendant conduct a thorough investigation under the circumstances of this case. Indeed, these sections are plainly inapposite here. Section 24.2–651 outlines what should occur when "a voter is listed on the pollbook but is known or suspected not to be a qualified voter." This law therefore relates to challenging a voter's qualifications to vote *at the polls*.[18] Va.Code § 24.2–651.1 is also clearly inapplicable. This law relates to challenging "the vote of any person who offers to vote, who is listed on the pollbook, and whose name is marked to indicate that he has already voted in person in the election." Va.Code § 24.2–651.1. Plaintiff does not allege in his complaint

---

**18.** Moreover, by its terms, § 24.2–651 appears to have no application to this case. Under this section, if the challenged voter insists that he is qualified and the challenge is not withdrawn, an election officer must provide him with a form to fill out. This form, which the voter is required to sign subject to felony penalties for making false statements, states, *inter alia*, that "[the voter is] a resident of the Commonwealth of Virginia (or that [he has] been a resident of this Commonwealth within the preceding 30 days and [is] voting only for electors of President and Vice President of the United States.)" Va.Code § 24.2–651. Because the voter is not required to make any statements regarding his specific address or the district in which he resides, it appears that this law does not apply to local elections, otherwise more than a statement that the voter is a resident of Virginia would be required.

that his voter qualifications were challenged at the polls because his name had been marked on the pollbook to indicate that he had already voted in person in the election. Plaintiff, therefore, has not pointed to any procedures or steps that Secretary Price was required to follow before referring the voter fraud allegation to the Commonwealth's Attorney. Indeed, to the contrary, Va.Code § 24.2–1019 supports the actions she took in referring the allegation against plaintiff to that office.

In sum, therefore, Count IV must be dismissed in its entirety.

## C. Count V

In Count V, plaintiff alleges that defendants Price, Jensen, the Commonwealth of Virginia, Governor Warner, Parker and Anderson conditioned his right to register to vote by infringing on his right to choose where he lives, limiting his right to move to a new residence without restrictions, punishing him for taking up a new residence, and questioning his new residence.

To be sure, the right to travel is a fundamental right protected by the due process clause. *See United States v. Guest,* 383 U.S. 745, 757, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966).[19] Plaintiff argues that the allegedly new procedure that defendants implemented without preclearance essentially imposed a durational residency requirement for voter registration. Plaintiff thus argues that defendants burdened his right to travel by investigating his voter registration in Loudoun County because of the gradual process by which he moved

there, including the maintenance of another residence outside of Loudoun County.

Durational residency requirements for voting eligibility have been held unconstitutional,[20] although not all durational residency requirements for voting are impermissible. *See, e.g., Marston v. Lewis,* 410 U.S. 679, 93 S.Ct. 1211, 35 L.Ed.2d 627 (1973) (upholding a 50–day residency requirement for voting to provide election officials sufficient time to check election rolls, prevent fraud, and administer the election). Still, it is clear that no durational residency requirement was imposed here. Plaintiff was not prevented from registering to vote because he had just moved to Loudoun County or because he moved there in a gradual process. He was indeed permitted to register to vote despite his new and gradual resident status.

Moreover, it is clear that "[d]espite the fundamental nature of the right to vote, states may nevertheless impose certain qualifications on and regulate access to the franchise." *Greidinger v. Davis,* 988 F.2d 1344, 1349 (4th Cir.1993). Such powers have been employed to restrict the franchise in numerous contexts, including residency and minimum age requirements. *See Marston v. Lewis,* 410 U.S. 679, 93 S.Ct. 1211, 35 L.Ed.2d 627 (1973) (residency); *Oregon v. Mitchell,* 400 U.S. 112, 91 S.Ct. 260, 27 L.Ed.2d 272 (1970) (age minimums). Plaintiff does not allege that requiring an individual to be a resident of Loudoun County to vote in Loudoun County elections is unconstitutional. Clearly, it is not. *See Holt Civic Club v. City of Tuscaloosa,* 439 U.S. 60, 99 S.Ct. 383, 58 L.Ed.2d 292 (1978) (holding that city may

---

**19.** The Supreme Court has articulated and applied the right to travel primarily in evaluating laws that impose durational residency requirements. *See, e.g., Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (holding unconstitutional laws that imposed a one-year residency requirement in

the state as a prerequisite for eligibility for welfare).

**20.** *See, e.g., Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (declaring unconstitutional a one-year durational residency requirement for voting eligibility).

limit voting in city elections to its residents). Therefore, simply questioning the veracity of the residency information on an individual's voter registration application also is not an unconstitutional burden on plaintiff's right to travel. Indeed, questioning and investigating the veracity of such information is one way to ensure that new residents are in fact eligible to vote without imposing a blanket durational residency requirement for voting eligibility.[21]

In sum, therefore, investigating possible voter registration fraud does not qualify as a durational residency requirement and is not in itself a violation or abridgement of plaintiff's constitutional right to travel. Count V must therefore be dismissed in its entirety.

### III.

Given that all of plaintiff's federal claims merit threshold dismissal, it is unnecessary to reach and decide plaintiff's state law claims or to address defendants' immunity defenses, and, therefore, no opinion is expressed as to these matters. It is therefore appropriate, especially given the early stage of this case, to dismiss the state law claims without prejudice so they may be pursued in state court, if plaintiff so desires. *See* 28 U.S.C. § 1367; *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir.1995) ("The doctrine of supplemental jurisdiction indicates that federal courts generally have discretion to retain or dismiss state law claims when the federal basis for action drops away.").

Of course, nothing in this opinion or ruling is intended to indicate any view as to the merits of plaintiff's state law claims. Nor is anything in this opinion intended to convey that plaintiff's personal and professional ordeal as a result of defendants' alleged actions was either *de minimis* or

any less consequential to him than he has alleged.

An appropriate order will issue.

---

21. Nor was plaintiff "punished" for taking up a new residence. The veracity of the residency information he provided on his voter registration application was questioned and investigated.