**Alfred BONE SHIRT; Belva Black Lance; Bonnie High Bull; and Germaine Moves Camp, Plaintiffs,**

v.

**Joyce HAZELTINE, in her official capacity as Secretary of the State of South Dakota; Scott Eccarius, in his official capacity as the Speaker of the South Dakota House of Representatives; South Dakota House of Representatives; Arnold Brown, in his official capacity as President of the South Dakota Senate; and South Dakota Senate, Defendants.**

**No Civ. 01–3032–KES.**

United States District Court,
D. South Dakota,
Central Division.

Oct. 4, 2005.

Bryan L. Sells, Laughlin McDonald, Neil Bradley, American Civil Liberties Union Foundation, Atlanta, GA, Patrick K. Duffy, Duffy & Duffy, Rapid City, SD, for Plaintiffs.

John P. Guhin, Sherri Sundem Wald, Attorney General's Office, Cheryl Schrempp Dupris, U.S. Attorney's Office Pierre Office, Pierre, SD, Gaye L. Tenoso, R. Tamar Hagler, Department of Justice, Civil Rights Div., Washington, DC, for Defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR NEW TRIAL AND AMENDMENT OF JUDGMENT

SCHREIER, District Judge.

Defendants (hereinafter referred to as the "State") move for an order pursuant to Fed.R.Civ.P. 59, 60(a), or 60(b) to vacate or modify the court's August 18, 2004 Remedial Order, or alternatively, for the court to convene a three-judge district court to determine whether the Remedial Order is subject to preclearance pursuant to § 5 of the Voting Rights Act. (Docket 362). Plaintiffs oppose the motion. The State did not reply to plaintiffs' response. The motion is denied.

## BACKGROUND

In November of 2001, the South Dakota Legislature enacted a statewide legislative redistricting plan. Plaintiffs filed suit contending that the plan violated § 2 and § 5 of the Voting Rights Act. On January 29, 2002, a three-judge district court of this court held that the plan violated § 5. *See Bone Shirt v. Hazeltine,* 200 F.Supp.2d 1150 (D.S.D.2002). On September 15, 2004, this court held that the plan also violated § 2. *Bone Shirt v. Hazeltine,* 336 F.Supp.2d 976 (D.S.D.2004).

The court gave the State the first opportunity to fashion a new, constitutional apportionment plan; however, the State was concerned that it lacked power under the S.D. Constitution to engage in legislative apportionment in a year other than the year following a decennial census. At the State's request, the court certified the question of the State's power to the South Dakota Supreme Court and gave the State thirty days following the Supreme Court's action to submit a proposed apportionment plan. On June 29, 2005, the Supreme Court held that the South Dakota Legislature is authorized to apportion the areas affected by the court's finding that § 2 of the Voting Rights Act was violated. *Bone Shirt v. Hazeltine,* 700 N.W.2d 746 (S.D. 2005). Nevertheless, on July 29, 2005, the State informed the court that it "respectfully declined to submit a new apportionment plan or a remedial proposal to the Court." (Docket 358). The court then issued a Remedial Order on August 18, 2005, which adopted the plan proposed by plaintiffs.

On August 28, 2005, the State moved to vacate or amend the Remedial Order to require submission to the Department of Justice for preclearance pursuant to § 5 of the Voting Rights Act. Alternatively, the State requests that the court convene a three-judge district court to ascertain whether the Remedial Order is subject to § 5 preclearance.

## DISCUSSION

■ Section 5 of the Voting Rights Act requires preclearance of a change in voting "standard, practice, or procedure" in covered jurisdictions before the voting change can be enforced. 42 U.S.C. § 1973c. A change in state law that affects the voting practices of a covered jurisdiction triggers § 5, even if the state as a whole is not a covered jurisdiction. *Lopez v. Monterey County,* 525 U.S. 266, 282, 119 S.Ct. 693, 142 L.Ed.2d 728 (1999) (*Lopez II.*) A covered jurisdiction can obtain preclearance through two different methods. The jurisdiction can seek a declaratory judgment in the United States District Court for the District of Columbia that the change "does not have the effect of denying or abridging the right to vote on account or race or color." 42 U.S.C. § 1973c. Alternatively, the jurisdiction can submit the change to the Attorney General, who has sixty days to object. *Id.*

■ "If a voting change subject to § 5 has not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting implementation of the change." *Lopez v. Monterey County, Cal.,* 519 U.S. 9, 20, 117 S.Ct. 340, 347, 136 L.Ed.2d 273 (1996) (*Lopez I*). "Private litigants may commence an action under Section 5 of the Voting Rights Act in a local district court ..., however, [the action] must 'be heard and determined by a court of three judges in accordance with the provisions of section 2284 of Title 28.'" *Moseley v. Price,* 300 F.Supp.2d 389, 394 (E.D.Va. 2004) (quoting 28 U.S.C. § 1973c). The three-judge district court's jurisdiction is limited to determining "whether § 5 covers a contested change, whether § 5's approval requirements were satisfied, and if the requirements were not satisfied, what temporary remedy, if any, is appropriate." *Lopez I,* 519 U.S. at 23, 117 S.Ct. 340, 136 L.Ed.2d 273.

Two South Dakota counties—Shannon and Todd—are covered jurisdictions subject to § 5. The State contends that the Remedial Order is a voting change affecting Shannon and Todd counties, and thus, it is not enforceable because it was not precleared. Plaintiffs, among other things, contend that the State lacks standing to invoke § 5 and that the Remedial Order is not subject to preclearance. (Docket 369).

■ As a preliminary matter, this court must determine whether it has jurisdiction to consider these matters, or whether it must convene a three-judge district court. All actions under § 5 "shall be heard and determined" by a three-judge district court. 28 U.S.C. § 1973c. Only a three-judge district court has jurisdiction to determine whether a voting change is covered by § 5, *see Moseley,* 300 F.Supp.2d at 394; however, a single district court judge can "determine that three judges are not required." 28 U.S.C. § 2284(b)(1). A three-judge district court is not required if the party seeking relief lacks standing. *See Giles v. Ashcroft,* 193 F.Supp.2d 258, 262 (D.D.C.2002) ("An individual district court judge may consider threshold jurisdictional challenges before convening a three-judge panel.") Additionally, a three-judge district court is not required if the party's claims are "wholly insubstantial." *Moseley,* 300 F.Supp.2d at 394. As discussed below, both of these exceptions apply, and thus, the court has jurisdiction to dispose of the matter without convening a three-judge district court.

### I. Standing

■ The State's motion is predicated on it having standing to obtain relief pursuant to § 5.[1] The State must have standing to seek relief on each particular issue; standing for the case as a whole is insufficient. *See O'Connor v. Jones*, 946 F.2d 1395, 1400–01 (8th Cir.1991) (stating that standing to file a § 1983 claim did not equate "standing to raise by motion any issue that may occur to him in the course of the litigation"). The State must also satisfy both the constitutional and prudential limits of federal jurisdiction. *Rosebud Sioux Tribe*, 286 F.3d at 1036.

■ According to the constitutional limits, the party invoking federal jurisdiction must satisfy the Article III case and controversy requirement. *O'Connor*, 946 F.2d at 1400. "To establish Article III standing, a [party] has the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision." *Steger v. Franco, Inc.*, 228 F.3d 889, 893 (8th Cir.2000).

■ The State lacks Article III standing because it fails to establish an injury-in-fact. "An injury in fact is a 'direct injury' resulting from the challenged conduct." *McClain v. Am. Econ. Ins. Co.*, 424 F.3d 728, 730 (8th Cir.2005). To establish an injury, the party seeking relief must establish " 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.' " *Young Am. Corp. v. Affiliated Computer Servs., Inc.*, 424 F.3d 840, 843 (8th Cir.2005) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S.

555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A general grievance experienced by all when the government acts unlawfully is not an injury-in-fact. *See Tarsney v. O'Keefe*, 225 F.3d 929, 936 (8th Cir.2000).

The State fails to establish that it was injured by the lack of § 5 preclearance of the Remedial Order. At most, the State alleges that the Remedial Order violates the Voting Rights Act; however, the State fails to establish how it "personally has suffered some actual or threatened injury . . . ." *Id.* at 934. The State has not articulated any injury to it. The court finds that the State has suffered nothing more than a generalized grievance, and thus, has not suffered an injury-in-fact.

The State also fails to establish a causal link between the allegedly wrongful activity—failure to preclear the Remedial Order—and an injury-in-fact. The State has the power to submit the Remedial Order for preclearance. *See* 28 C.F.R. § 51.23(a). Nothing in the Remedial Order prevents the State from submitting the Remedial Order's apportionment plan for preclearance on its own volition. Thus, to the extent the State is harmed, the harm was caused by the State's failure to exercise its own power, not the court's entry of the Remedial Order. Because the State has established neither an injury-in-fact nor a causal relationship, it lacks Article III standing and the court need not address the third standing element. *Young Am. Corp.*, 424 F.3d 840, 844.

■ The State also fails the prudential standing requirement. "In addition to the constitutional requirements, standing also involves prudential limits on the exercise of federal jurisdiction." *Rosebud*

---

1. Standing is typically analyzed from a plaintiff's perspective because that is the person seeking relief. The party's designation does not matter, however, because the proper analysis focuses on whether the party is legally entitled to relief. *See Allen v. State Bd. of*

*Elections*, 393 U.S. 544, 554, 89 S.Ct. 817, 826, 22 L.Ed.2d 1 (1969); *Rosebud Sioux Tribe v. McDivitt*, 286 F.3d 1031,1036(8 th Cir.2002). Here, the State is seeking relief under § 5, and thus, it must have standing to invoke that statute.

*Sioux Tribe,* 286 F.3d at 1036. The prudential limits imposed by the zone-of-interest test require that "a federal court ask whether 'the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the [party's] position a right to judicial relief.'" *Conway Sch. Dist. v. Wilhoit,* 854 F.Supp. 1430, 1433 (E.D.Ark.1994) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). The statutory purpose must be to protect the interests of the party seeking relief. *See Cent. S.D. Co-op. Grazing Dist. v. Secretary of United States Dep't of Agric.,* 266 F.3d 889, 896 (8th Cir.2001).

The State fails the zone-of-interest test because § 5 protects voters, not state governments. "Congress designed the preclearance procedure 'to forestall the danger that local decisions to modify voting practices will impair minority access to the electoral process.'" *Lopez I,* 519 U.S. at 23, 117 S.Ct. at 348, 136 L.Ed.2d 273 (quoting *McDaniel v. Sanchez,* 452 U.S. 130, 149, 101 S.Ct. 2224, 2236, 68 L.Ed.2d 724 (1981)). Congress did not intend to create legally cognizable rights for the State when it adopted § 5 to protect the minority-voter plaintiffs from the State. *See Rosebud Sioux Tribe,* 286 F.3d at 1037 (refusing to interpret statute protecting Native American Tribe from those with whom it contracts to create "legally enforceable rights" for the party who contracted with the Tribe). Section 5's protections do not extend to the State's interest, and thus, the State fails the zone-of-interest prudential standing requirement.

■■■ Furthermore, standing to seek relief under the Voting Rights Act is limited to voters and the Attorney General. *Roberts v. Wamser,* 883 F.2d 617, 621 (8th Cir.1989); *see also Conway Sch. Dist.,* 854

F.Supp. at 1433. In *Conway School District,* the school district sought a declaratory judgment in the District Court for the Eastern District of Arkansas finding that the district was currently in compliance with the Voting Rights Act. The court noted that the "purpose of the Voting Rights Act is to protect minority voters," and thus, the State lacked standing to assert a claim. *Id.; see also Ill. Legislative Redistricting Comm'n v. LaPaille,* 782 F.Supp. 1267, 1271 (N.D.Ill.1991). Similarly, the State here lacks standing to seek the protection of § 5 preclearance.

As discussed above, the State has failed to establish both constitutional standing and prudential standing. Because the State lacks standing, the court can, and hereby does, deny the State's motion without convening a three-judge district court.

## II. Wholly Insubstantial Claim

■■■ The court also denies the State's motion and refuses to convene a three-judge district court because the court finds that the State's § 5 claims are wholly insubstantial. "[W]here § 5 claims are 'wholly insubstantial' and completely without merit, such as where the claims are frivolous, essentially fictitious, *or determined by prior case law,* a single judge may dismiss the claims without convening a three-judge court." *League of United Latin Am. Citizens v. Texas,* 113 F.3d 53, 55 (5th Cir.1997) (emphasis added); *see also Knight v. Alsop,* 535 F.2d 466, 469–70 (8th Cir.1976).

■■■ In *Connor v. Johnson,* 402 U.S. 690, 691, 91 S.Ct. 1760, 1762, 29 L.Ed.2d 268 (1971) (per curiam), the United States Supreme Court held that a "decree of the United States District Court is not within reach of Section 5 of the Voting Rights Act."[2] *See also McDaniel,* 452 U.S. at 138,

---

**2.** The State contends that *McDaniel,* 452 U.S. 130, 101 S.Ct. 2224, 68 L.Ed.2d 724, limits this exclusion to plans fashioned wholly by

the court; however, this misconstrues the applicable law. *McDaniel* held that preclear-

101 S.Ct. at 2230, 68 L.Ed.2d 724. Every court that has addressed this question has concluded that court-adopted remedial plans proposed by private citizens are not subject to preclearance. *See Dillard v. City of Greensboro,* 74 F.3d 230, 232 & n. 6 (11th Cir.1996); *Smith v. Cobb County Bd. of Elections & Registrations,* 314 F.Supp.2d 1274, 1295 (N.D.Ga.2002); *Wesch v. Hunt,* 785 F.Supp. 1491, 1499 (S.D.Ala.1992), *aff'd sub nom., Camp v. Wesch,* 504 U.S. 902, 112 S.Ct. 1926, 118 L.Ed.2d 535 (1992); *Puerto Rican Legal Defense & Educ. Fund v. Gantt,* 796 F.Supp. 681, 697 (E.D.N.Y.1992). To require preclearance would offend separation of power notions by granting the Department of Justice, for all practical purposes, appellate review of the court's Remedial Order:

> [A] reapportionment plan formulated and ordered by a federal district court need not be approved by the United States Attorney General or the United States District Court for the District of Columbia. Under our constitutional system it would be strange indeed to construe § 5 of the Voting Rights Act of 1965 ... to require that actions of a federal court be stayed and reviewed by the Attorney General or the United States District Court for the District of Columbia.

*Connor,* 402 U.S. at 695, 91 S.Ct. at 1763, 29 L.Ed.2d 268 (Black, J. dissenting) (citations omitted); *see also McDaniel,* 452 U.S. at 138 n. 15, 101 S.Ct. at 2230, 68 L.Ed.2d 724. Accordingly, the State's claims are wholly insubstantial and the court denies the State's motion without convening a three-judge district court.

Based on the foregoing, it is hereby

ORDERED that defendants' motion to vacate the Remedial Order and Judgment pursuant to Fed.R.Evid. 59, 60(a), or 60(b)(1) (Docket 362) is denied.

IT IS FURTHER ORDERED that defendants' request to convene a three-judge district court (Docket 362) is denied.

---

ance was required when the district court adopts a legislative plan "reflecting the policy choices of elected representatives." *Id.* at 153, 452 U.S. 130, 101 S.Ct. at 2238, 68 L.Ed.2d 724. Here, the court adopted plaintiffs' proposed plan and plaintiffs, as private citizens, cannot legislate. Indeed, the only party able to legislate in this case is the State, and the court did not adopt the State's plan because the State refused to propose a plan. Thus, *McDaniel* does not apply.